UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:18-cv-22923-GAYLES/OTAZO-REYES

JELEN CARPIO,

    Plaintiff,

vs.

NCL (BAHAMAS) LTD.,
D-I DAVIT INTERNATIONAL, INC.,
HATECKE SERVICE USA, LLC

    Defendant.

_____

### DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION

Defendant, NCL (Bahamas) LTD. ("Norwegian"), by and through undersigned counsel, hereby moves to dismiss and compel this dispute to arbitration, and states:

### Background

This Court should compel this dispute to arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("The Convention Act" 9 U.S.C. 201-08). Alternatively, this Court can dismiss this action based on *forum non conveniens* requiring Plaintiff to seek redress in the Philippines. Plaintiff and Norwegian previously settled this claim, and Plaintiff executed a release mandating that all disputes regarding its construction or validity be brought back in the Philippines.

Diogenes Carpio ("Decedent"), a Filipino citizen, was employed as a crewmember onboard Norwegian's cruise ship the *Breakaway*. Decedent died during a 2016 rescue boat drill. Plaintiff, Decedent's wife, initiated an arbitration proceeding against Norwegian in the Philippines as she was required to do based on Decedent's employment agreement and collective

bargaining agreement. Plaintiff and Norwegian settled the arbitration, and Plaintiff released any and all her claims against Norwegian. Despite this, Plaintiff retained Florida lawyers and sued Norwegian and two other defendants in Florida state court. Norwegian removed this action to this Court to compel Plaintiff's dispute back to arbitration under the employment agreement, the collective bargaining agreement, and the release. As outlined below, this Court must grant Norwegian's motion.

Decedent's employment with Norwegian was governed by terms and conditions set forth in his employment agreement. Decedent, as a Philippine citizen, was hired to work onboard Norwegian's ship through the Philippine government. The Philippines Overseas Employment Administration ("POEA"), a division of the Department of Labor and Employment, promulgates numerous rules and regulations for the employment of Filipino citizens at sea.

Decedent was required to submit any dispute against Norwegian to binding and mandatory arbitration in the Philippines with the POEA. [Employment Agreement, attached as Exhibit 1; ECF No. 1-1 p. 1 ¶ 2]. His POEA-approved employment agreement incorporates "Governing Board Resolution No. 9 and Memorandum Circular No. 10, both Series of 2010" by reference, stating that they "shall be strictly and faithfully observed." [Exhibit 1, p. 1 ¶ 2]. The POEA requires "the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of voluntary arbitrators." [Memorandum Circular 10 § 29, attached as Exhibit 2].

Decedent's collective bargaining agreement likewise mandated that he submit disputes with Norwegian to arbitration. The agreement provides that "[a]ny and all claims, grievances and disputes of any kind whatsoever . . . shall be referred to and resolved exclusively by binding arbitration[.]" [CBA Art. 29, attached as Exhibit 3].

CASE NO.: CASE NO: 1:18-cv-22923-GAYLES/OTAZO-REYES

As a result of the multiple mandatory arbitration agreements, Plaintiff initiated arbitration against Norwegian in the Philippines through the POEA following Decedent's death. The parties ultimately settled, and Plaintiff executed a "Release of all Rights" in exchange for a monetary settlement. The parties agreed that the release "shall in all respects be governed by the laws of the Philippines including all matters of construction and validity. I further agree that any disputes arising from this settlement agreement shall be referred to the competent court or authorities of the Philippines, to the exclusion of any other forum." [Release, attached as Exhibit 4; ECF No. 1-3 p. 3].

The Release was executed as part of the arbitration proceedings, and Plaintiff signed same before the Labor Arbiter/Administering Officer. [Exhibit 4, p. 4]. The Release, a seaman's "red-letter" release, required Plaintiff to fill in certain portions in her own handwriting to show she knew what she was doing. She wrote that she was releasing Norwegian, that she was releasing all her rights against it, that she read the Release, knew what it was, and knew that signing same "settles and ends EVERY right or claim you may have, whether it be based on contract, tort or on other grounds." [Exhibit 4, p. 4]. The POEA arbitrator accepted the Release and granted the joint motion to dismiss the Filipino arbitration proceedings with prejudice.

Plaintiff had a subsequent change of heart. Now represented by Florida attorneys, she brought suit in Florida state court, alleging a survival action under the Jones Act, a Death on the High Seas Act claim, and unseaworthiness. She contended that the release was not supported by consideration because she received $130,000, to settle her claims against Norwegian. [ECF No. 1-2 p. 13 ¶ 25]. She contended that the settlement amounted to the death benefit she was already entitled to under Decedent's collective bargaining agreement. [*Id.*]. Norwegian removed this action to compel it back to arbitration from where it came.

CASE NO.: CASE NO: 1:18-cv-22923-GAYLES/OTAZO-REYES

**Memorandum of Law**

**1.      Plaintiff's claim against Norwegian are subject to arbitration.**

This Court must compel this case to arbitration pursuant to the Convention. Arbitration agreements are highly favored and rigorously enforced by courts. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). A court has very little discretion in deciding whether to enforce a valid arbitration agreement. *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005). Arbitration agreements concerning foreign commerce are given particular deference. *Mitsubishi Motors*, 473 U.S. at 629. Any doubts concerning the scope of arbitration should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

Foreign seaman arbitration agreements, just like this one, are universally enforced by this Court and the Eleventh Circuit pursuant to the Convention. *E.g.*, *Bautista*, 396 F.3d at 1289; *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011); *Maxwell v. NCL (Bahamas) Ltd.*, 454 F. App'x 709 (11th Cir. 2011); *Azavedo v. Royal Caribbean Cruises, Ltd.*, 4 F. Supp. 3d 1357 (S.D. Fla. 2014); *Tancu v. Celebrity Cruises, Inc.*, 2010 WL 271432 (S.D. Fla. Jan. 15, 2010); *see also Moncada v. Carnival Corp.*, 13-cv-23779-CMA [ECF No. 4] (S.D. Fla. Oct. 18, 2013).

The seminal Eleventh Circuit case compelling foreign crewmember cases to arbitration, *Bautista*, involved Filipino seafarers and the POEA. *Bautista*, 396 F.3d at 1289. Just like this case, the *Bautista* crewmembers signed POEA-approved employment agreements that incorporated its standard terms and conditions, including arbitration. *Id*. at 1293. The court

compelled the disputes to arbitration in the Philippines under the Convention, finding the agreements enforceable with no valid defenses to arbitration.

In deciding whether to compel arbitration under the Convention, this Court must conduct a very limited inquiry. *See Bautista*, 396 F.3d at 1294. A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met, or (2) one of the Convention's affirmative defenses applies. *Id*. The four jurisdictional prerequisites are: (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a signatory to the Convention; (3) the agreement to arbitrate arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *Id*.

This Court has jurisdiction to enforce the arbitration agreements here as all four prerequisites are met. The arbitration agreements are in writing—the employment agreement, collective bargaining agreement, and release; the arbitration agreements provide for arbitration in the Philippines, a signatory to the Convention; the arbitration agreements arise out of a commercial, legal relationship, *Bautista*, 396 F.3d at 1300; and Plaintiff is not a United States citizen. All of Plaintiff's claims fall within the arbitration agreement. This case must be compelled to arbitration.

None of the Convention's affirmative defenses to arbitration apply either. A party may only avoid arbitration under the Convention where "said agreement is null and void, inoperative or incapable of being performed." *Lindo*, 652 F.3d at 1263. The affirmative defenses are confined to "standard breach-of-contract defenses" such as fraud, mistake, duress, and waiver "that can be applied neutrally on an international scale." *Id*. Public policy or unconscionability arguments are not valid affirmative defenses to prevent the enforcement of an arbitration

agreement under the Convention. *Id*. at 1280. Plaintiff has no valid affirmative defense to arbitration in this case.

**2. Issues regarding the validity of the release are arbitrated in the Philippines.**

Any challenge Plaintiff makes against the release is to be considered by arbitrators in the Philippines like the rest of her claims. A challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). And an arbitration clause requiring both parties to submit to arbitration constitutes all the consideration needed for the agreement. *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp. 2d 375, 385 (E.D. Ky. 2006) (citing *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 380 (6th Cir. 2005)).

The Supreme Court has made clear that "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777-78 (2010). Parties can agree to the arbitrability of gateway issues, "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id*. at 2777. Thus, a court may conclude that the parties agreed to arbitrate the very issue of "arbitrability" where "there is clear and unmistakable evidence that they did so." *Id.* at 79, 130 S. Ct. at 2783 (internal quotation marks omitted). Further, unless the party opposing arbitration specifically challenges the validity of the arbitration clause, the district court must treat it as valid and delegate decisions regarding the validity of the agreement to the arbitrator. *See id*. at 2779.

The release requires that all disputes concerning its construction and validity are governed by the laws of the Philippines and "shall be referred to the competent court or

authorities of the Philippines, to the exclusion of any other forum." [ECF No. 1-3 p. 3]. According to the POEA memoranda and resolutions, the authority that must hear this dispute is the POEA arbitration system. There is no basis for Plaintiff to challenge the release in U.S. courts. Her arguments that the release is not supported by consideration are for the Filipino authorities to consider in the first instance. Any challenge to the Release must be compelled back to arbitration in the Philippines.

3.  **The Court can alternatively dismiss this case under *forum non conveniens* if it finds that Plaintiff's challenge to the Release can be brought in a Filipino court.**

To the extent that this Court construes the Release to contain a mandatory forum selection clause in the Philippines, but not a mandatory arbitration clause, this Court must dismiss this action for Plaintiff to refile in the Philippines based on *forum non conveniens*. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013). "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*. (alterations in original).

The forum non conveniens analysis requires the court to analyze whether (1) an adequate alternative forum is available; (2) the public and private factors weigh in favor of dismissal; and (3) the plaintiff can reinstitute his suit in the alternative forum without undue inconvenience or prejudice. *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001) (citing *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983)). The typical *forum non conveniens* analysis is altered in situations where a forum selection clause exists. *Id*. "First, the plaintiff's choice of forum merits no weight." *Id*. at 63. "Second, a court . . . should not consider arguments about the parties' private interests." *Id*. "Third, when a party bound by a forum-selection clause

flouts its contractual obligation and files suit in a different forum, a transfer of venue will not carry with it the original venue's choice of law rules." Id. at 64.

The relevant factors weigh clearly in favor of dismissal. The Philippines is certainly an adequate forum. Plaintiff already litigated this dispute there in a POEA-approved arbitration. The parties settled that arbitration, and Plaintiff voluntarily dismissed her claims with prejudice. Plaintiff's Release required any dispute concerning the construction or validity of the Release to be brought, if at all, in the Philippines subject to Filipino law. *See Membreno v. Costa Crociere, S.p.A.*, 425 F.3d 932, 936 (11th Cir. 2005) ("The first step in determining whether an action should be dismissed for forum non conveniens is to determine whether United States law should be applied to the case."). These factors weigh in favor of dismissal. Lastly, Plaintiff can bring her claims against the release back in arbitration in the Philippines. In sum, if this Court believes the Release contains a venue provision, but not an arbitration provision, it should dismiss this action. Plaintiff's complaints against the Release can only be heard in the Philippines.

## Conclusion

Plaintiff fully and finally settled this case with Norwegian in arbitration in the Philippines, and simply has buyer's remorse. She must bring these claims, if at all, in the Philippines pursuant to the multiple arbitration agreements Decedent agreed to in addition to the Release she executed in exchange for a monetary settlement. Her substantive claims are all subject to arbitration in the Philippines. She obviously knew this because she initially began proceedings there. Her arguments against the Release also must be heard in the Philippines. Plaintiff's contention that the Release is not supported by consideration does not prevent the enforcement of the venue provision within same since the parties agreed to arbitrate issues of the Release's construction and validity. If the Court construes the Releases provisions as a forum

selection clause, not an arbitration provision, it must dismiss this suit for *forum non conveniens*. In the end, there is no basis for this litigation to remain in Florida state or federal court. This Court must grant Norwegian's motion.

### S.D. Fla. L.R. 7.1 Certification

I hereby certify that counsel for movant conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in this motion, but was unable to do so.

Respectfully submitted,

MASE MEBANE & BRIGGS, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile: (305) 377-0080

By: /s/ *Cameron W. Eubanks*
CURTIS J. MASE
Florida Bar No.478083
cmase@maselaw.com
kfehr@maselaw.com
filing@maselaw.com
CAMERON W. EUBANKS
Florida Bar No.: 85865
ceubanks@maselaw.com
filing@maselaw.com

CASE NO.: CASE NO: 1:18-cv-22923-GAYLES/OTAZO-REYES

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2018, I electronically filed the foregoing document with the Clerk to the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Cameron Eubanks*
CAMERON EUBANKS

## **SERVICE LIST**

Michael A. Winkleman, Esq.
Jason R. Margulies, Esq.
Lipcon, Margulies, Alsina & Winkleman, P.A.
Suite 1776, One Biscayne Tower
2 South Biscayne Blvd.
Miami, Florida  33131
Tel: (305) 373-3016
Fax: (305) 373-6204
mwinkleman@lipcon.com
jmargulies@lipcon.com
Anotari@lipcon.com
*Attorneys for Plaintiff*

Jerry D. Hamilton, Esq.
Robert M. Oldershaw, Esq.
Elisha M. Sullivan, Esq.
150 S.E. 2nd Avenue, Suite 1200
Miami, Florida  33131
Tel: (305) 379-3686
Fax: (305) 379-3690

CASE NO.: CASE NO: 1:18-cv-22923-GAYLES/OTAZO-REYES

jhamilton@hamiltonmillerlaw.com
roldershaw@hamiltonmillerlaw.com
esullivan@hamiltonmillerlaw.com
gbernardez@hamiltonmillerlaw.com
spayne@hamiltonmillerlaw.com
*Attorneys for Defendant Hatecke Service USA, LLC.*

CARPIO/33