UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-cv-22923-DPG

JELEN CARPIO,
as personal representative of the
estate of DIOGENES CARPIO, JR.,

       Plaintiff,

v.

NCL (BAHAMAS) LTD.,
D-I DAVIT INTERNATIONAL, INC.,
HATECKE SERVICE USA, LLC., and
D-I DAVIT INTERNATIONAL-HISCHE
GMBH,

       Defendants.

                             /

## AMENDED COMPLAINT

      COMES NOW, Plaintiff, JELEN CARPIO, as personal representative of the estate of

DIOGENES CARPIO, JR., and sues the Defendants NCL (BAHAMAS) LTD., D-I DAVIT

INTERNATIONAL, INC., HATECKE SERVICE USA, LLC., and D-I DAVIT

INTERNATIONAL-HISCHE GMBH, and alleges as follows:

## GENERAL ALLEGATIONS

### a. Jurisdiction

1.   This is an action for the death of the decedent on behalf of the Estate and all survivors

     and beneficiaries under the Jones Act, 46 U.S.C. §3104; the General Maritime Law of the

     United States; the Death on the High Seas Act, 46 U.S.C. § 30301 et seq., and any other

     applicable wrongful death law, seeking damages in excess of the jurisdictional minimum,

exclusive of costs, attorneys' fees and interest.

2. Plaintiff, Jelen Carpio, as a Personal representative for the Estate of Diogenes Carpio, Jr., deceased [hereinafter "decedent"], is a citizen and resident of the Philippines.  Plaintiff brings this action on behalf of the Estate and on behalf of all survivors who are entitled to recover including, but not limited, to:

    A. Jelen Carpio, Wife;

    B. Terrence Jude O. Carpio, minor child (10), born September 28, 2007.

    C. Jillian Denise O. Carpio, minor child (8) born June 29, 2010.

3. Diogenes Carpio was a citizen of the Philippines and employed as a seamen, working for the Defendant Norwegian Cruise Lines (Bahamas) Ltd. [hereinafter "NCL"] as a second officer of the Deck Department.

4. Defendant NCL is a Bermuda corporation with its principal place of business in Miami, Florida, where it engages in extensive business activities.

5. Defendant D-I DAVIT INTERNATIONAL, INC [hereinafter "Davit International"] is a foreign for profit corporation registered to do business in Florida with offices and an officer/director in Ft. Lauderdale, Florida.

6. Defendant HATECKE SERVICE USA, LLC [hereinafter "Hatecke"] is a Florida Limited Liability company registered to do business in Florida with offices in Miami, Florida.

7. Defendant D-I DAVIT INTERNATIONAL GMBH [hereinafter "Davit DE"] is the parent company of Davit International.   Davit DE is a foreign for profit corporation doing business in Florida through its agent and/or representative, Davit International.

**b. Status of the Parties**

8. At all times materials hereto, the Defendant NCL owned, operated, managed and/or

2

controlled the *Norwegian Breakaway*, and was the employer of Diogenes Carpio.

9.  At all times material hereto, Davit International and/or Davit DE, was the manufacturer and/or seller of the davit(s) which was/were incorporated into the lifeboat system used aboard the *Norwegian Breakaway*.

10. At all times material hereto, Davit International and/or Davit DE provided aftersales customer support to Defendant NCL, as to all aspects of the davits and lifeboat systems, including but not limited to annual and periodic inspections accordance with required SOLAS, IMO and other applicable industry standards, as well as maintenance, repairs, technical help and crew training.

11. At all times material hereto, Defendant Hatecke provided service, maintenance, repairs, inspection and/or surveys of the lifeboat systems aboard the *Norwegian Breakaway*, and certifying that each lifeboat systems' fitness for their intended use in accordance with required SOLAS, IMO and other applicable industry standards.

12. At all times material hereto, Diogenes Carpio was a seamen under the Jones Act, because the Defendant NCL maintained its base of operations in the United States, the Defendant NCL was publicly traded on the New York Stock Exchange, an extremely substantial amount of the Defendant's revenue is derived by its operations in the United States and through the sale of cruise tickets to U.S. passengers, and the Defendant's vessel upon which the decedent was injured and regularly sailed out of U.S. ports as did the majority of Defendant's fleet, in addition to other contacts with the United States.

13. Since the Decedent Diogenes Carpio was a Jones Act seaman, the Plaintiff is entitled to the federal statutory remedies set forth in the Jones Act, 46 U.S.C. §3104 and the Federal Employers Liability Act, 45 U.S.C. §51 et seq incorporated therein by reference, the

Death on the High Seas Act 46 U.S.C. § 30301, as well as the remedies guaranteed by the United States Supreme Court set forth as part of the general maritime law for seamen.

### c. Facts Giving Rise to the Cause of Action

14. On July 20, 2016, Diogenes Carpio was working on board the Defendant's vessel, *Norwegian Breakaway*, carrying out job duties assigned to him. The vessel was in navigable waters around Bermuda.

15. Decedent Diogenes Carpio was assigned to conduct and assist in an unusual amount of lifeboat drills, such as Code Alpha (Medical Emergency), Code Bravo (Fire onboard), Code Delta (Ship damage), and Code Oscar (Man overboard)[1]. This is more than the usual number of drills and for a longer period of time, making it exhaustive on not only the participants, but also on the equipment used.

16. The subject lifeboat system incorporated and utilized a davit which was manufactured and sold by Defendant Davit International and/or Davit DE, and the lifeboat system was serviced, inspected, certified and/or maintained (at least in part) by Defendants Davit International, Davit DE and/or Hatecke.

17. After entering a lifeboat on Deck 7, the lifeboat detached from the vessel when a securing wire in the lifeboat system snapped and/or broke causing decedent Diogenes Carpio to fall nearly six stories into the water on top of other seamen participating in the drill.

18. The search for decedent Diogenes Carpio was delayed and took a considerable amount of time because Defendant's management at the time did not properly inform and direct the crewmembers of the actual emergency, resulting in most crewmembers believing that when the "Man Overboard" Code was called, it was still part of the drill. Diogenes

---

[1] The Man Overboard drill required Diogenes Carpio to board a lifeboat, to be lowered into the sea, and then used to retrieve a man overboard in this simulation process.

Carpio drowned and met his untimely death, in part, because of the delayed search efforts by the crew of the *Norwegian Breakaway*. Even after the seriousness of the Man Overboard code was apparent, the management of the vessel failed to alert real and actual emergency personnel.

19. As a direct and proximate result of Defendant's failure to provide reasonably safe lifeboat system, and the delayed search efforts, Diogenes Carpio suffered acute cardio respiratory failure from drowning, and died.

20. As a direct and proximate result of Defendant's negligence, decedent Diogenes Carpio met his untimely demise on July 20, 2016.

21. On November 8, 2016, Plaintiff met with in-house counsel for C.F. Sharp Crew Management, Inc., manning agent and legal representative of Defendant NCL in the Philippines.  Plaintiff requested payment of the death benefits she was contractually entitled to receive pursuant to Diogenes Carpio's employment contract and the applicable Collective Bargaining Agreement [hereinafter "CBA"].

22.  In-house counsel made numerous misrepresentations to the Plaintiff, advising her that she was not entitled to receive the contractual death benefits without first executing a release waiving any and all claims against Defendant NCL and its manning agent C.F. Sharp Management, Inc.

23. In-house counsel then escorted the Plaintiff to the offices of Department of Labor and Employment, National Labor Relations Commission ("NLRC"), where she assisted the Plaintiff in filing a Complaint in order to initiate the arbitration.  In-house counsel then instructed the Plaintiff to execute a Release of All Claims, Receipt of Payment and the Joint Motion to Dismiss (all documents prepared by in-house counsel) so she could

receive the death benefits Defendant NCL was contractual obligated to pay. Relying on the representations of in-house counsel, and in need of funds to support her family, Plaintiff signed the documents presented to her.   In-house counsel then had the Labor Arbitrator approval of the so-called settlement, concluding the arbitration.

24. In-house counsel purposefully and intentionally failed to have the Plaintiff sign the approved Model Receipt and Release Form for Contractual Claims contained in the CBA which contains language which would have specifically preserved Plaintiff's rights to "pursue any claim at law in the respect to negligence, tort, or other legal redress available."

25. Rather, the documents in-house counsel prepared and told the Plaintiff she must sign, contained language which waived the rights the were otherwise specifically preserved in the approved Model Receipt and Release Form for Contractual Claims.  The Plaintiff received no new consideration for the Release of any claims against Defendant NCL beyond those it was contractually obligated to pay.

26. At all times material, in-house counsel was Defendant NCL's legal representative, agent and/or apparent agent and all of her actions and statements were done for the purpose and benefit of Defendant NCL.

27. At no time did the Plaintiff, who was still grieving over the tragic loss of her husband and trying to raise her young children, ever have the benefit of her own legal representation.

28. The release is invalid as it was were not freely executed in good faith, at arms-length, or in a manner to ensure that the Plaintiff understood her legal rights.   To the contrary, in-house counsel purposefully and intentionally misrepresented the Plaintiff's legal rights to her and the Plaintiff relied on these misrepresentations to her detriment.

Lipcon, Margulies, Alsina & Winkleman, P.A.

29. The release is also invalid for lacking consideration because the amount received was something that Plaintiff was already entitled to pursuant to the decedent's employment contract, which (as shown below) stated there was a death benefit that was payable without prejudice to any claim at law.

30. "Questions regarding enforceability or validity of settlement agreements are determined by federal law when the substantive rights and liabilities of the parties derive from federal law." *See Allem v. Noble Drillin (U.S.) Inc.*, 637 So.2d 1298 (La. App. 4th Cir. 1994) (*citing, Borne v. A&P Boat Rentals No. 4, Inc.*, 780 F.2d 1254, 1256 (5th Cir. 1986).

31. The release at issue is a contract to abandon maritime death claim under federal law. Consequently, federal law must be applied to decide the enforceability of the release. *See Allen*, 637 So.2d at 1301 and *Borne*, 780 F.2d at 1256 (both stating that federal law must be utilized to decide the validity and enforceability of a settlement agreement when the plaintiff's claims are premised on federal general maritime law and the Jones Act).

32. The controlling legal standard in determining whether a release executed by a seaman is valid is the United States Supreme Court case of *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248 (1942). *See, e.g., Complaint of Bankers Trust Co.*, 752 F.2d 874, 884 (3d Cir. 1984). Because the relationship between a seaman and his employer is unlike a traditional employee-employer relationship, and because seamen are "wards of admiralty," an employer owes a fiduciary duty to its seaman. *Richards v. Relentless, Inc.*, 341 F.3d 35 (1st Cir. 2003) (*citing Garrett*, 317 U.S. at 246). It is for this reason that the burden is on the employer to show that the release of claims "was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights." *Richards*, 341 F.3d at 41 (*quoting Garrett*, 317 U.S. at 248).

> If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that *pro tanto* the bargain ought to be set aside as inequitable.

> *Id.* at 41-42 (*quoting Garrett*, 317 U.S. at 248) (internal citations and quotations marks omitted).

33. The release must also be fair to the seaman. *Schultz v. Paradise Cruises Ltd.*, 888 F.Supp. 1049, 1053 (1994) (*citing United States v. Johnson*, 160 F.2d 789, 794 (9th Cir. 1947), *rev'd in part on other grounds*, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 (1948), (*quoting Garrett*, 317 U.S. at 248)). A court may not "merely rubber stamp the settlement." *Schultz*, 888 F.Supp. at 1053 (citing *Whaley v. Rydman*, 887 F.2d 976 (9th Cir. 1989)). The employer "bears the burden of proving that the seaman had an informed understanding of the significance of the release." *Id. (citing Whaley*, 887 F.2d at 979).

34. "The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding." *Blanco v. Moran Shipping Co.*, 483 F.2d 63 (5th Cir. 1973) (quoting *Garret*, 317 U.S. at 248). While inadequate consideration alone is not sufficient to invalidate a release, it will make the burden of enforcing the release "particularly heavy." *Orsini v. O/S Seabrooke O.N.*, 247 F.3d 953, 962 (9th Cir. 2001). Moreover, if consideration for a seaman's release is grossly inadequate, the release will be deemed invalid as a matter of law. *Id. See also Resner v. Artic Orion Fisheries*, 83 F.3d 271, 274 (9th Cir. 1996). "A release is not valid *if what is paid is something to which a [seaman] is entitled* under any circumstances of the case." *Blake v. W.R. Chamberlin & Co.*, 176 F.2d 511, 513 (9th Cir. 1949); *see also Isthmian Lines, Inc. v. Haire*, 334 F.2d 521, 523 (5th Cir. 1964)(**noting that a release for payments for amounts admittedly due lacks**

8

**consideration**). The court in *Blake* explained:

> If, for example, defendant paid to plaintiff money to which plaintiff was already entitled, that is, earned wages, earned maintenance, and bonus, and things of like character, then if you so find, the taking of the release for other things such as damages and future maintenance would be without consideration and the release would be **void**.

35. The *Blake* decision is instructive to this case because the $130,000 settlement money received would otherwise be entitled to Plaintiff pursuant to the Collective Bargaining Agreement ["CBA"], which is incorporated within the Philippine Overseas Employment Administration ["POEA"] contract, the decedent's employment contract with the Defendant. The CBA states that "if a seafarer dies whilst in the employment of Norwegian," Norwegian shall pay "$90,000 to the spouse and $20,000 to each dependent child under the age of 21." Accordingly, Plaintiff was already entitled to $130,000 as she is the decedent's spouse and the decedent leaves behind two dependent children under the age of 21. The CBA contract further states that "any payment effected under any section of [Article 20 – Loss of Life] shall be **without prejudice** to any claim for compensation made in law and made without any delay … and shall be credited toward any further claims that [Norwegian] may be responsible for."

36. The release should be deemed invalid and/or set aside and/or vacated for the grossly inadequate consideration because Plaintiff was otherwise entitled to $130,000 in death benefits through the CBA. Clearly, there was no bargained for exchange between Plaintiff and Defendant NCL when the release was executed, and thus, the release shall be deemed void as a matter of law.

37. Furthermore, "[i]f the jury finds that the compensation or settlement the seaman received was inadequate, it may consider that inadequacy of consideration as evidence that the plaintiff did not understand his rights at the time he signed the release." *Richards v.*

*Relentless, Inc.*, 341 F.3d 35, 48 (1st Cir. 2003) (*citing Garrett*, 317 U.S. at 247). The fact

that Plaintiff accepted $130,000 in exchange for giving up her right to the continued

pursuit of a potentially far greater damagers recovery is positive proof that she did not

understand her rights at the time she signed the release.

38. Alternatively, Labor Arbitrator's rubber-stamped approval of the so-called settlement

should be deemed the decision of the arbitrator.  The Plaintiff is entitled to challenge the

arbitration decision and raise her public policy defense at the post-arbitration

enforcement stage.  *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257 (11th Cir. 2011);

*Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985).

## COUNT I SURVIVAL ACTION UNDER THE JONES ACT AGAINST DEFENDANT NCL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in

paragraphs one (1) through thirty eight (38) as though alleged originally herein.

39. On July 20, 2016, Diogenes Carpio was employed by Defendant NCL as a seaman and

was a member of the crew on aboard the *Norwegian Breakaway*. The vessel was in

navigable waters in Bermuda.

40. Defendant owed Diogenes Carpio a duty of reasonable care for his safety, including care

to maintain the vessel in a reasonably safe condition and to operate the vessel safely and

to provide a reasonably safe working environment.

41. Diogenes Carpio death is due to the fault and negligence of Defendant, and/or its agents,

servants, and/or employees, as follows:

   a. Defendant failed to use reasonable care to provide and maintain a proper and

   adequate machinery, crew and equipment, including and especially the equipment

   and machinery for the lifeboat system, as well as the crew involved in the lifeboat

drill and the crew involved with responding to the actual emergency at issue;

b.  Defendant failed to update and modernize the shipboard equipment to eliminate the unsafe and dangerous conditions that developed;

c.  Defendant failed to properly maintain the equipment involved in the lifeboat system, leading to failure of the tethering and the davit wire cord used to lower and raise the lifeboat, rendering the operation of the lifeboat unsafe and dangerous, and unfit for its intended purpose;

d.  Defendant failed to properly instruct and train the crew members to make sure the equipment involved was properly inspected for dangers, and properly operated before use;

e.  Defendant failed to ascertain the cause of prior similar accidents so as to take measures to prevent their recurrence, and more particularly decedent's accident;

f.  Failure to provide a safe place to work in that the lifeboat system and operation was not performed in a safe manner;

g.  Defendant continued to utilize the lifeboat system even with knowledge of the faulty and unsafe equipment;

h.  Defendant failed to provide adequate instruction, and supervision by failing to timely alert the crew members of the actual and on-going emergency when the decedent and other seamen fell several stories into the ocean;

i.  Defendant failed to use reasonable care to provide decedent with a reasonably safe workplace;

j.  Defendant failed to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly the decedent,

while engaged in the course of his employment on said vessel;

k.  Defendant used outmoded work methods and procedures and neglected modern material handling techniques;

l.  Defendant failed to provide decedent with mechanized aids, commonly available in other heavy industries;

m.  Defendant failed to use reasonable care in ensuring the safety of the crew when Defendant planned on executing an unusual amount of drills, knowing the life boats would be lowered and raised several times from Deck 7, creating more pressure on the equipment that is rarely used; and/or

n.  Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

42. At all times material hereto, Defendant knew of the foregoing conditions causing the decedent's injuries and death and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

43. As a direct and proximate result of the negligence of Defendant, Diogenes Carpio died.

**WHEREFORE**, Plaintiff demands damages as allowed under the Jones Act, 46 U.S.C. § 30104, including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, and funeral expenses, and all other damages allowable by law, including punitive damages.  Plaintiff demands a trial by jury for all issues so triable and any other relief this Court deems proper.

## <u>COUNT II—UNSEAWORTHINESS AGAINST DEFENDANT NCL</u>

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in

paragraphs one (1) through thirty eight (38) as though alleged originally herein.

44. On July 20, 2016, Diogenes Carpio was employed by Defendant NCL as a seaman and was a member of the crew on aboard the *Norwegian Breakaway*. The vessel was in navigable waters in Bermuda.

45. At all times material hereto, the vessel was owned, managed, operated and/or controlled by Defendant.

46. Defendant NCL had the absolute non-delegable duty to provide decedent Diogenes Carpio with a seaworthy vessel. When equipment fails under normal use, a presumption arises that the equipment was defective and hence unseaworthy. *See Villers Seafood Co., Inc. v. Vest*, 813 F.2d 339, 342 (11th Cir. 1987).

47. On July 20, 2016, Defendant breached that duty to decedent by providing him with an unseaworthy vessel on which to work as a seaman.

48. On July 20, 2016, the unseaworthiness of Defendant's vessel was a legal cause of injuries and damages to decedent Diogenes Carpio by reason of the following:

   a. The vessel was rendered unsafe and unfit, due to the conditions created by Defendant, as follows: (1) Having a defective and/or faulty lifeboat system, including but not limited to the davit and worn down tether and wire cord, making the operation of the lifeboat system not only unfit for its intended purpose, but in such a condition to be dangerous and place those who utilize the lifeboat system at risk for serious injury or death; (2) The vessel was unsafe and unfit due to the conditions created by Defendant's conduct; (3) The job methods and procedures were not reasonably fit for the intended purpose as it posed an unreasonable risk of injury; (4) Due to an unsafe working environment; (5) By the presence of a

lifeboat system not reasonably fit for its intended purpose; (6) By the total disregard for the lives and safety of anyone utilizing the lifeboat system davit; (7) Defendant unreasonably required decedent and other crewmembers to work with inadequate and/or defective machinery and equipment, especially for the lifeboat drill; (8) Defendant unreasonably required decedent to participate in work activities with an inadequate and/or untrained crew, especially for the lifeboat drill, and the untimely rescue of the decedent and the other seamen that fell several stories into the ocean; (9) Defendant unreasonably failed to warn the decedent of the dangers associated with his work activities, especially for the life boat drill; (10) Defendant failed to provide decedent and his fellow crewmembers with proper training and/or supervision with respect to work activities, especially for the lifeboat drill and the untimely rescue of the decedent; (11) Defendant unreasonably failed to provide adequate manpower to perform the work activities aboard the vessel, especially for the lifeboat drill and the untimely rescue of the decedent; (12) Defendant unreasonably created an unsafe work environment; (13) Defendant unreasonably perpetuated an unsafe work environment; (14) Defendant created a working environment where crew members are discouraged and/or unable to assist each other with duties; and (15) Defendant perpetuated an unsafe work environment where crew members were discouraged and/or unable to assist each other in work duties; all of which caused decedent to become injured.

b.   The vessel was not fit for its intended purpose;

c.   The vessel lacked proper equipment and machinery, which was demonstrated by having a defective and/or faulty lifeboat system, including but not limited to the

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

davit and worn down tether and wire cord;

    d.  The vessel's crew was not properly trained, instructed or supervised, which is demonstrated by the untimely rescue effort after the decedent fell into the water;

    e.  The vessel did not have a fit crew;

    f.  Failure to conduct proper job analysis and risk of harm analysis;

    g.  The vessel did not have adequate manpower for the tasks being performed; and/or

    h.  The crew and decedent were overworked to the point of being exhausted and not physically fit to carry out their duties.

49. As a direct result of the unseaworthiness of the vessel mentioned above, Diogenes Carpio died.

**WHEREFORE**, Plaintiff demands damages as allowed under the General Maritime Law, including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, and funeral expenses, and all other damages allowable by law, including punitive damages.  Plaintiff demands a trial by jury for all issues so triable and any other relief this Court deems proper.

## COUNT III - DEATH ON THE HIGH SEAS ACT (46 U.S.C. § 30301et seq.) AGAINST ALL DEFENDANTS

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty eight (38) as though alleged originally herein.

50. At all times material hereto, Defendants owed Diogenes Carpio a duty of reasonable care.

51. On July 20, 2016, Diogenes Carpio died due to the fault and negligence of Defendants, their employees, and/or agents, and due to the unseaworthiness of the vessel as follows:

    a.  Failure to use reasonable care to provide and maintain a safe place to work for Diogenes Carpio, fit with proper and adequate machinery, crew and equipment,

including and especially the equipment and machinery of the lifeboat system, as well as the crew involved in the life boat drill;

b.   Defendants failed to update and modernize the shipboard equipment to eliminate the unsafe and dangerous conditions that developed;

c.   Defendants failed to properly maintain the equipment involved, leading to failure of the lifeboat system, including but not limited to the tethering and the davit wire cord used to lower and raise the lifeboat, rendering the operation of the lifeboat unsafe and dangerous, and unfit for its intended purpose;

d.   Defendants failed to properly instruct and train the crew members to make sure the equipment involved was properly inspected for dangers, and properly operated before each and every use;

e.   Defendants failed to ascertain the cause of prior similar accidents so as to take measures to prevent their recurrence, and more particularly decedent's accident;

f.   Failure to provide a safe place to work in that the lifeboat operation was not performed in a safe manner;

g.   Defendants continued to utilize the lifeboat system even with knowledge of the faulty and unsafe equipment;

h.   Defendants failed to provide adequate instruction and supervision by failing to timely alert the crew members of the actual and on-going emergency when the decedents and other seamen fell several stories into the ocean;

i.   Defendants failed to use reasonable care in ensuring the safety of the crew when Defendant planned on executing an unusual amount of drills, knowing the life boats would be lowered and raised several times from Deck 7, creating more

pressure on the equipment that is rarely used;

j.  Failure to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly Diogenes Carpio, while engaged in the course of his employment on said vessel;

k.  Failure to use reasonable care to maintain the vessel and its equipment;

l.  Failure to provide adequate crew in terms of numbers and/or training for the operations undertaken at the time of the subject incident;

m.  Failure to provide and utilize adequate safety devices at the time of the subject incident;

n.  Defendants used outmoded work methods and procedures and neglected modern material handling techniques;

o.  Defendants failed to provide Plaintiff with mechanized aids, commonly available in other heavy industries;

p.  Failing to adequately manage the vessel's crew;

q.  Failure to utilize proper equipment;

r.  Failure to provide reasonable and adequate aftersales customer support;

s.  Failure to properly and adequately inspect the lifeboat system in accordance with required SOLAS, IMO and other applicable industry standards, as well as maintenance, repairs, technical help and crew training; and/or

t.  Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

52. As a result of the negligence of Defendants, its agents and employee and/or the unseaworthiness of the vessel, Diogenes Carpio died. Diogenes Carpio's survivors, his

wife Jelen Carpio, and his two children Terence Jude Carpio, 9 years old and Denise Carpio, 6 years old, sustained pecuniary losses as allowed by law.

**WHEREFORE**, Plaintiff demands damages as allowed under the Death on the High Seas Act, 46 USC §30301 et seq., and/or any other applicable wrongful death and/or survival act, including but not limited to pecuniary losses, loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, funeral expenses, and all other damages allowable by law. Plaintiff demands a trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT IV – WRONGFUL DEATH UNDER THE GENERAL MARITIME LAW AGAINST DEFENDANT NCL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty eight (38) as though alleged originally herein.

53. On July 20, 2016, the decedent was employed by Defendant as a seaman and was a member of the crew on aboard the *Norwegian Breakaway*. The vessel was in navigable waters in Bermuda.

54. Pursuant to the General Maritime law, Defendant owed decedent a duty of reasonable care for his safety, including care to maintain the vessel in a reasonably safe condition and to operate the vessel safely and to provide a reasonably safe working environment.

55. On July 20, 2016, decedent Diogenes Carpio suffered severe injuries, pre-death conscious pain and suffering, and ultimately died due to Defendant, and/or its agents, servants, and/or employees, breaching its duty to decedent through the following acts and/or omissions:

   a. Defendant failed to use reasonable care to provide and maintain a proper and adequate machinery, crew and equipment, including and especially the equipment

and machinery for the lifeboat system, as well as the crew involved in the life boat drill and the crew involved with responding to the actual emergency at issue;

b.  Defendant failed to update and modernize the shipboard equipment to eliminate the unsafe and dangerous conditions that developed;

c.  Defendant failed to properly maintain the equipment involved leading to failure of equipment, rendering the operation of the lifeboat system unsafe and dangerous, and unfit for its intended purpose;

d.  Defendant failed to properly instruct and train the crew members to make sure the equipment involved was properly inspected for dangers, and properly operated before use;

e.  Defendant failed to ascertain the cause of prior similar accidents so as to take measures to prevent their recurrence, and more particularly decedent's accident;

f.  Defendant used outmoded work methods and procedures and neglected modern material handling techniques;

g.  Defendant failed to provide decedent with mechanized aids, commonly available in other heavy industries;

h.  Failure to provide a safe place to work in that the lifeboat system and operation was not performed in a safe manner;

i.  Defendant continued to utilize the lifeboat system even with knowledge of the faulty and unsafe equipment;

j.  Defendant failed to provide adequate instruction, and supervision by failing to timely alert the crew members of the actual and on-going emergency when the decedent and other seamen fell several stories into the ocean;

    k.   Defendant failed to provide decedent with a seaworthy vessel;

    l.   Defendant failed to use reasonable care to provide decedent with a reasonably safe workplace;

    m.  Defendant failed to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly the decedent, while engaged in the course of his employment on said vessel;

    n.   Defendant failed to provide adequate instruction, and supervision to crew members and decedent;

    o.   Defendant failed to provide prompt, proper and adequate medical care which aggravated decedent's injuries and caused him additional pain and disability;

    p.   Defendant failed to use reasonable care in ensuring the safety of the crew when Defendant planned on executing an unusual amount of drills, knowing the life boats would be lowered and raised several times from Deck 7; and/or

    q.   Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

56. At all times material hereto, Defendant knew of the foregoing conditions causing the decedent's injuries and death and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

57. As a direct and proximate result of the negligence of Defendant, the decedent was injured about his body and extremities, consciously suffered physical pain and suffering, and then died.

**WHEREFORE**, Plaintiff demands damages as allowed under the Jones Act, 46 U.S.C. §

30104, and/or the General Maritime Law, including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages.  Plaintiff demands a trial by jury for all issues so triable and any other relief this Court deems proper.

### COUNT V – WRONGFUL DEATH UNDER THE GENERAL MARITIME LAW AGAINST DEFENDANTS DAVIT INTERNATIONAL, DAVIT DE AND HATECKE

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty eight (38) as though alleged originally herein.

58. Pursuant to the General Maritime law, Defendants Davit International, Davit DE and Hatecke owed decedent Diogenes Carpio a duty of reasonable care.

59. On July 20, 2016, decedent suffered severe injuries, pre-death conscious pain and suffering, and ultimately died due to Defendants, and/or their agents, servants, and/or employees, breaching its duty to decedent through the following acts and/or omissions:

   a. Failure to provide a properly working lifeboat system, including but not limited to the davit and/or related equipment which failed;

   b. Failure to adequately service, install, repair, maintain and/or inspect the subject lifeboat system, including but not limited to the davit and/or related equipment which failed;

   c. Failure to properly warn of the dangers which befell the decedent;

   d. Failure to have proper manuals, or policies or procedures designed to prevent the incident which occurred;

   e. Defendants failed to update and modernize the shipboard equipment to eliminate the unsafe and dangerous conditions that developed;

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

f.  Defendants failed to properly maintain the equipment involved leading to failure of equipment, rendering the operation of the lifeboat system unsafe and dangerous, and unfit for its intended purpose;

g.  Defendants failed to properly instruct and train the crew members to make sure the equipment involved was properly inspected for dangers, and properly operated before use;

h.  Defendants failed to ascertain the cause of prior similar accidents so as to take measures to prevent their recurrence, and more particularly decedent's accident;

i.  Defendants used outmoded work methods and procedures and neglected modern material handling techniques;

j.  Defendants failed to provide decedent with mechanized aids, commonly available in other heavy industries;

k.  Defendants continued to utilize the lifeboat system even with knowledge of the faulty and unsafe equipment;

l.  Defendants failed to provide adequate instruction, and supervision to crew members and Plaintiff;

m.  Failure to inspect or investigate the davit for defects and/or dangers and/or hazards;

n.   Failure to provide adequate warnings for prospective users and handlers of the davit, including the decedent;

o.  Failure to provide reasonable and adequate aftersales customer support;

p.  Failure to properly and adequately inspect the lifeboat system in accordance with required SOLAS, IMO and other applicable industry standards, as well as

maintenance, repairs, technical help and crew training; and/or

q.   Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

60. At all times material hereto, Defendants knew of the foregoing conditions causing the Plaintiff's injuries and death and did not correct them, or the conditions existed for a sufficient length of time so that Defendants, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

61. As a direct and proximate result of the negligence of Defendant, the decedent was injured about his body and extremities, consciously suffered physical pain and suffering, and then died.

**WHEREFORE**, Plaintiff demands damages as allowed under the Jones Act, 46 U.S.C. § 30104, and/or the General Maritime Law, including but not limited to loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages.  Plaintiff demands a trial by jury for all issues so triable and any other relief this Court deems proper.

## COUNT VI – STRICT LIABILITY AGAINST DEFENDANTS DAVIT INTERNATIONAL AND DAVIT DE

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty eight (38) as though alleged originally herein.

62. Defendant Davit International and/or Davit DE manufactured, designed, marketed, sold, and distributed a Davit D-NPS.MP which was installed and incorporated into the lifeboat system on the *Norwegian Breakaway*.  Said davit failed to safely operate as intended. But for the failure of this davit and/or related equipment, decedent would not have suffered

the loss of life.

63. At all times material hereto, Davit International and/or Davit DE had a duty to manufacture, design, distribute, market, and sell a non-defective and properly designed and manufactured davit that was suitable for normal and foreseeable usage. Defendant's respective duties included authorizing the manufacture, design, distribution, marketing, and sale of a properly designed and manufactured davit capable of safely withstanding known, foreseeable forces associated with safe handling and normal usage.

64. While using the davit with appropriate care, the davit malfunctioned and created a hazardous situation whereby decedent was killed due to the malfunction of the davit.

65. The condition of the subject davit from the time it left its place of manufacture through the time of decedent's accident, was defective and unreasonably dangerous to intended and foreseeable users, including decedent, in one or more of the following ways and for one or more of the following reasons:

a. The davit onboard the *Norwegian Breakaway* which failed to work properly, was defectively designed from a handling standpoint such that it had an unreasonably dangerous propensity to fail under foreseeable handling and use conditions and failed to have an adequate support structure to prevent the type of incident which occurred;

b. The davit was unaccompanied by any sufficient warning of the danger of malfunction from the use of the device in a foreseeable manner, such that the danger of automatically starting and creating a dangerous situation would be communicated to the users of the device;

c. The davit was improperly designed, manufactured, and assembled, thus causing the device to have an unreasonable and dangerous propensity to malfunction when used

or handled under foreseeable conditions, including foreseeable drills;

d. The davit was improperly and inadequately tested;

e. The hazards of the davit were improperly determined;

f. The davit lacked adequate and sufficient warnings and instructions about the risks, dangers, and harms presented by the device and reasonable means to reduce such risks, dangers, and harms; and/or

g. The davit did not perform as safely as an ordinary consumer would expect when used as intended and in manners reasonably foreseeable to those in the chain of distribution of the davit.

66. The unreasonably dangerous nature of the defective condition of the davit created a high risk that the device would be involved in, and it was involved in, a malfunction resulting in the loss of life.

67. As a direct and proximate result of the defects, and subsequent malfunction, in the davit, the decedent was killed, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions there from, suffered physical handicap, lost earnings and earning capacity both past and future.   Plaintiff's damages further include loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendants and demands trial by jury.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

## COUNT VII – BREACH OF IMPLIED WARRANTY OF FITNESS FOR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AGAINST DEFENDANTS DAVIT INTERNATIONAL AND DAVIT DE

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty eight (38) as though alleged originally herein.

68. At the time of the sale, marketing, distribution, manufacture, and design of the davit Defendant Davit International and/or Davit DE had extensive knowledge of the purpose for which the product was to be used. The Defendants knew and/or should have known and expected that their expertise, skill and judgment were being relied upon to select, sell, distribute, market, manufacture, and design a safe and suitable product which would not injure its user under normal foreseeable circumstances and usage. Davit International and/or Davit DE implied and warranted the davit device as being safe and fit for the purpose decedent utilized davit for.

69. Davit International and/or Davit DE breached its implied warranty of fitness of safe user usage by distributing, delivering, marketing, and/or selling the defective davit which was unsafe and dangerous, and not reasonably fit for the ordinary purpose for which the davit is used.

70. As a direct and proximate cause of the Defendants Davit International's and/or Davit DE's breach of their implied warranty, decedent was killed when the davit designed, manufactured and sold by Defendant Davit International and/or Davit DE malfunctioned.

71. In addition, as a direct and proximate cause of the Defendant Davit International's and/or Davit DE's breach of their implied warranty, the decedent was killed, was injured about his body and extremities, suffered physical pain, mental anguish, loss of

enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions there from, suffered physical handicap, lost earnings and earning capacity both past and future.  Plaintiff's damages further include loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, pre-death pain and suffering, and funeral expenses, and all other damages allowable by law, including punitive damages.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the defendant and demands trial by jury.

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:  */s/ Carol L. Finklehoffe*
**MICHAEL A. WINKLEMAN**
Florida Bar No.: 36719
mwinkleman@lipcon.com
**CAROL L. FINKLEOFFE**
Florida Bar No. 0015903
cfinklehoffe@lipcon.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 28, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

By: */s/ Carol L. Finklehoffe* _____
**CAROL L. FINKLEOFFE**

**SERVICE LIST**

*Carpio v. NCL (Bahamas) Ltd. et. al.*
**case no.: 18-cv-22923-DPG**

| | |
|---|---|
| **Michael Winkleman, Esq.** <br> Florida Bar No.: 36719 <br> mwinkleman@lipcon.com <br> **Carol L. Finklehoffe, Esq.** <br> Florida Bar No.: 0015903 <br> cfinklehoffe@lipcon.com <br> LIPCON, MARGULIES, <br> ALSINA & WINKLEMAN, P.A. <br> One Biscayne Tower, Suite 1776 <br> 2 South Biscayne Boulevard <br> Miami, Florida 33131 <br> Telephone No.: (305) 373-3016 <br> Facsimile No.: (305) 373-6204 <br> *Attorneys for Plaintiff* | **Jerry D. Hamilton, Esq.** <br> Florida Bar No.: 970700 <br> jhamilton@hamiltonmillerlaw.com <br> **Robert M. Oldershaw, Esq.** <br> Florida Bar No.: 86071 <br> roldershaw@hamiltonmillerlaw.com <br> **Elisha M. Sullivan, Esq.** <br> Florida Bar No.: 57559 <br> esullivan@hamiltonmillerlaw.com <br> emarrero@hammiltonmillerlaw.com <br> dlemus@hamiltonmillerlaw.com <br> 150 S.E. 2nd Avenue, Suite 1200 <br> Miami, Florida 33131 <br> Tel: (305) 379-3686 <br> Fax: (305) 379-3690 <br> *Attorneys for Defendant Hatecke Service USA, LLC* |
| **Anthony P. Strasius, Esq.** <br> Florida Bar No.: 988715 <br> Anthony.strasius@wilsonelser.com <br> **Steven C. Jones, Esq.** <br> Florida Bar No.: 107516 <br> Steven.jones@wilsonelser.com <br> Wilson, Elser, Moskowitz, <br> Edelman & Dicker, LLP <br> 100 Southeast Second Street, Suite 3800 <br> Miami, Florida 33131 <br> Tel: (305) 374-4400 <br> Fax: (305) 579-0261 <br> *Attorneys for Defendant D-1 Davit International, Inc.* | **Curtis Mase, Esq.** <br> Florida Bar No.: 73928 <br> cmase@maselaw.com <br> kfehr@maselaw.com <br> **Cameron W. Eubanks, Esq.** <br> Florida Bar No.: 85865 <br> ceubanks@maselaw.com <br> rcoakley@maselaw.com <br> **Adam Finkel, Esq.** <br> Florida Bar No.: 101505 <br> afinkel@maselaw.com <br> **Scott P. Mebane, Esq.** <br> Florida Bar No.: 273030 <br> smebane@maselaw.com <br> ctoth@maselaw.com <br> receptionist@maselaw.com <br> MASE, MEBANE & BRIGGS <br> 2601 S. Bayshore, Drive, Suite 800 <br> Miami, Florida 33133 <br> Telephone: (305) 377-3770 |

| | Facsimile: (305) 377-0800 |
| | *Attorneys for Defendant NCL (Bahamas) Ltd.* |

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.