UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:18-cv-22923-DPG

JELEN CARPIO,
as personal representative of the
estate of DIOGENES CARPIO, JR.,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,
D-I DAVIT INTERNATIONAL, INC.,
HATECKE SERVICE USA, LLC

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

COMES NOW, Plaintiff, JELEN CARPIO, as personal representative of the estate of DIOGENES CARPIO, JR., by and through undersigned counsel, hereby responds in opposition to NCL (Bahamas) LTD.'s ("NCL") Motion to Dismiss and Compel Arbitration [D.E. 29].

**Introduction**

Crewmember Diogenes Carpio ("Decedent") was killed when, as a result of the Defendants' negligence, he plummeted six stories into the water during a life boat drill. He is survived by his wife and two minor children.

The *alleged* settlement which NCL relies upon as grounds to dismiss this case and compel arbitration is not a legally binding settlement. NCL's representative misled the Plaintiff into unknowingly and uncomprehendingly releasing NCL from any and all claims she might have for the death of her husband. The agreement was not negotiated at arm's length nor in

good faith. The Plaintiff received no new consideration for the Release of any claims against NCL beyond those it was contractually obligated to pay.   At no time did the Plaintiff, who was still grieving over the tragic loss of her husband and trying to raise her young children, ever have the benefit of her own legal representation.

Alternatively, the Labor Arbitrator's rubber-stamped approval of the so-called settlement should be deemed that decision of the arbitrator.  The Plaintiff is entitled to raise her public policy defense and seek an order vacating the arbitration award at the post-arbitration enforcement stage.  *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257 (11th Cir. 2011); *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985).

This Court has the authority to determine the validity of the *alleged* settlement and to vacate decision of the arbitrator which violates U.S. public policy.   Defendant NCL's Motion to Dismiss and to Compel Arbitration should properly be denied.

**Procedural Background**

1.      On July 20, 2016, Decedent suffered life-threatening injuries while participating in a lifeboat drill.

2.      Plaintiff met with attorney Carmela G. Magpantay who works as in-house counsel C.F. Sharp Crew Management, Inc., NCL's manning agent in the Philippines, to inquire about the benefits she was entitled to as a result of her husband's death.

3.      On behalf of NCL, attorney Magpantay "offered" to pay the death benefits and then presented the Plaintiff with a Receipt of Payment ("Receipt") and Release of All Rights (Composite Exhibit 2).  Attorney Magpantay intentionally represented that the Plaintiff must sign both documents in order to receive the money[1].

---

[1] This Court needs only to look to NCL's dealings with Geraldine Buenaventura, the widow of a crewmember who was also killed in the same life boat accident, to show how the Plaintiff was manipulated and mislead.  Ms.

4. Attorney Magpantay's statement was false and a misrepresentation as NCL was *contractually obligated* to pay the death benefits under the terms of Decedent's POEA employment contract ("POEA contract") and the Collective Bargaining Agreement ("CBA"). Payment of the death benefits related solely to NCL's *contractual* obligation and did not in any way account for NCL's negligence in the death of the Decedent. NCL would have been contractually obligated to pay these same death benefits if Decedent had simply died in his sleep aboard the vessel.

5. After misleading the Plaintiff about Receipt being mandatory, attorney Magpantay took the Plaintiff to the offices of Department of Labor and Employment, National Labor Relations Commission ("NLRC"), where she "assisted" the Plaintiff in filing a Complaint to initiate the arbitration.

6. At the NLRC offices, attorney Magpantay had the Plaintiff execute the Receipt, the Release of All Claims, Receipt of Payment and the Joint Motion to Dismiss, all documents that she had prepared in advance. The executed documents were submitted to the Labor Arbitrator who rubber-stamped approval of the so-called settlement. (Composite Exhibit 3)

7. The Plaintiff received no new consideration for the Release of any claims against NCL beyond those it was contractually obligated to pay.

---

Buenaventura also received the death benefits NCL was contractually obligated to pay. The difference is that Ms. Buenaventura was represented by counsel who ensured that she executed the approved Model Receipt and Release Form contained in the CBA. The Model Receipt specified that it was in satisfaction of the NCL's obligation to pay the contractual death benefits and it specifically preserved the rights to "pursue any claim at law in the respect to negligence, tort, or other legal redress available." *Compare*, Exhibit 1 – Receipt signed by Plaintiff and Exhibit 2 - Model Receipt and Release executed by Ms. Buenaventura.

**Memorandum of Law**

**This Court has the Authority and Jurisdiction to
Determine the Validity of the *Alleged* Settlement**

The Defendant asserts that Filipino law applies to the issue of whether the Filipino settlement agreement is valid in this case simply because a clause in the very release that is in dispute contains a Filipino choice-of-law provision. The Defendant is unquestionably wrong in its nonsensical assertion. Case law which is directly on point to this issue – which the Defendant fails to bring to this Honorable Court's attention – makes this evident.[2]

The issue as to whether the courts in this district should determine the validity of release has already been determined in the factually identical case of *Escalo v. Steiner Transocean, Ltd*., case no.: 13-21065-cv-CMA (Feb. 14, 2014). Just as in this case, the crewmember was wrongfully induced into executing a release[3] by an agent of her shipboard employer who got it a rubber-stamped approval from the NLRC arbitrator. The crewmember subsequently filed a claim against her shipboard employer under 46 USC §30104 and General Maritime Law of the United States. The defendant filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment arguing that there was a prior settlement and a release had been executed. The crewmember contested the validity of the release and the arbitration decision. The Court denied the defendant's motion and retained jurisdiction to determine the validity of the release.

---

[2] The Defendant's reliance on *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) is misplaced. In *Prima* the petitioner was challenging the contract containing the arbitration clause itself for suffering from fraud in the inducement. The petitioner in *Jackson* was also challenging the contract containing the arbitration clause for being unconscionable. Whereas in the present case, Plaintiff is challenging the validity of the release and settlement that was executed in arbitration, but not the separate and distinct contract that required the claims to originally be subject to arbitration. Furthermore, the contract in *Prima* called for arbitration in New York governed by U.S. law, which allows the claimant to seek U.S. statutory remedies. The present case is also distinguishable because arbitration was already instituted and completed pursuant to the employment contract, and Plaintiff is challenging the validity of the settlement and release, which does not contain an arbitration provision.

[3] Of note, the Release executed in this matter and the Release executed in the *Escalo* matter both contain an identical provision providing for the application of law of the Philippines as to all disputes arising from the settlement as well as clause designating the forum in the Philippines. (Exhibit 4- *Escalo* release)

Hereto, this Court should deny the Defendant's Motion.

In support of her position, the *Escalo* plaintiff relied on the analogous case of *Complaint of Bankers Trust Co. v. Bethlehem Steel Corp.*, 752 F.2d 874 (3d Cir. 1984). That matter involved the mother of a deceased seaman who sought to set aside and vacate a settlement and release which was executed in India and pertained to monies to which the mother would otherwise be entitled as a result of her son's death. In finding that the settlement and release should be set aside, the court held that the "initial step in any choice of law analysis involves the characterization of the subject matter of or the issues in the case (e.g., tort or contract) and of the nature of each issue and whether it raises a problem of procedural or substantive law." *Id*. at 881 (*citing* E. Scoles & P. Hay, *Conflict of Laws* 50-51 (1984)). The Circuit Court of Appeals in *Complaint of Bankers Trust* went on to further state that "[i]t is well-established that a release is the giving up or the abandoning of a claim or right to the person against whom the claim exists or the right is to be enforced or exercised and the release in this matter is a contract to abandon a maritime death claim under federal law." *Id*. at 883. The Court of Appeals appropriately concluded:

> The enforceability or validity of such settlement agreements is determined by federal law where the substantive rights and liabilities of the parties derive from federal law. *Mid-South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386 (5th Cir.1984). The law to be applied in this case is federal, since the rationale behind the court's admiralty jurisdiction is the interest in dealing with all the major concerns of the shipping industry as one body of law. *See* G. Gilmore & C. Black, *The Law of Admiralty* 29 (2d ed. 1975).

*Id.* at 883-84 (footnote omitted). Questions regarding enforceability or validity of settlement agreements are determined by federal law when the substantive rights and liabilities of the parties derive from federal law. *See Allen v. Noble Drilling (U.S.) Inc.*, 637 So.2d 1298 (La. App. 4th Cir. 1994) (citing to *Borne v. A&P Boat Rentals No. 4, Inc.*, 780 F.2d 1254, 1256 (5th Cir. 1986).

Here, the settlement and corresponding release at issue is a contract to abandon maritime death claims under federal law. It is undisputed that the Plaintiff's claims in the present case are premised on the Jones Act, federal general maritime law, and Death on the High Seas Act (DOHSA). [D.E. 41]. Consequently, federal law must be applied to decide the enforceability of the release. *See Allen*, 637 So.2d at 1301 and *Borne*, 780 F.2d at 1256 (both stating that federal law must be utilized to decide the validity and enforceability of a settlement agreement when the plaintiff's claims are premised on federal general maritime law and the Jones Act).

### This Court has the Authority to Resolve Post-Arbitration Challenges

In a long line of decisions, the Eleventh Circuit Court of Appeal adopted the two-step approach recognized in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 638 (1985) to seaman's arbitration agreements subject to the Convention on the Enforcement of Foreign Arbitral Awards [hereinafter the "Convention"]. There are two stages to arbitration related court proceedings: (1) an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206, and (2) at a later stage, an action to confirm, refuse to enforce, or vacate an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011); *see also Aggarao v. MOL Ship Management Co., Ltd.*, 2014 WL 3894079 (D.Md. Aug 7, 2014).

Article V of the Convention provides seven defenses that are directed at courts considering whether to recognize and enforce an arbitral award at the award enforcement stage. *Id.* (citing Convention, art. V). One of Article V's seven defenses is the "public policy" defense, which states:

> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
> …

>   (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Convention, art. V.2 (b). *See also Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011). The violation of public policy defense may be asserted at the post arbitration award enforcement stage to challenge the validity of the arbiter's award. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985).

Here, the settlement agreement between the Parties, with its rubber-stamped approval by the Labor Arbitrator, constitutes a final judgment of the arbitration proceeding. We further know from the companion case of *Buenaventura v. NCL (Bahamas) Ltd. et.al.,* case no: 18-cv-22922-KMM, the Plaintiff has a challenge to the arbitration decision based upon the Prospective Waiver Doctrine. In *Buenaventura* this matter was already arbitrated and the Arbitration Board dismissed the matter for lack of jurisdiction because the "*the dispute does not fall within the contemplation of a labor dispute*" under Article 262 of the Philippine Labor Code since "*what is being asked of this Board to rule pertains to tortious conduct of one party that would entitle the other party to damages.*" (Exhibit 5 - Buenaventura Arbitration Decision; see also case no: 18-cv-22922-KMM [D.E.49])

The Plaintiff is entitled to have her challenges to the post-arbitration decision ruled upon by this Court.

### **The Defendant's Forum Non Conveniens Argument is without Merit**

For the reasons set forth above, the Defendant cannot rely on the *alleged* mandatory forum selection clause to support its position since the clause is contained in the very release which is in dispute. As set forth above, NCL was contractually obligated to pay death benefits to the Plaintiff. Review of the Model Receipt and Release form for Contractual Claims which

NCL's representative purposefully and deliberately did not use, contains no such forum selection clause.  (*Compare*, Exhibit 1 and Exhibit 3)

A forum non conveniens analysis weighs heavily in the favor of denying the Defendant's motion.  It is nonsensical that NCL, which has its principle place of business in Miami, Florida, should argue that its own home forum is inconvenient.  *See, Cardoso v. FPB Bank*, 879 So.2d 1247 (3rd DCA 2004).  As noted by the decision in *Buenaventura,* there is not an adequate alternative forum.  (Exhibit 5)  Federal law applies when the enforceability or validity of release is questioned where one is giving up or the abandoning of a claim for a maritime death.  *Complaint of Bankers Trust,* 752 F.2d at 883.

### Seaman are Wards of the Court Requiring Protection

There are few, if any, areas of the law in which the public policy of the United States is more strongly recognized than the protection of seamen. *See, e.g., Am. Export Lines, Inc. v. Alvez*, 446 U.S. 274, 285 (1980); *Moragne v. States Marine Lines*, 398 U.S. 375 (1970). "Seafarers from the start were wards of admiralty." *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971) *citing Robertson v. Baldwin*, 165 U.S. 275, 287 (1897). As observed by the Supreme Court in *Collie v. Ferguson*, 281 S. Ct. 52, 55 (1930), maritime law has often found it necessary "to protect [seamen] from the harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class, they are peculiarly exposed."

To protect seamen from such abuse, both Congress and the Supreme Court have consistently rejected various schemes to deprive them of their guaranteed remedies. *See Aggarao v. MOL Ship Management Co., Ltd.*, 2014 WL 3894079 (D.Md. Aug 7, 2014) (refusing to recognize the Philippine Arbitration Board's award for violating the public policy of the United States because the plaintiff was unable to vindicate her Jones Act claims in arbitration).

- 8 -

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

Consequently, seamen like Buenaventura have traditionally been afforded special legal remedies. *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354 (1991).

Congress has been explicit in expressing the strong U.S. public policy for protection of seaman. Among the special remedies afforded to seamen is the Jones Act, originally enacted in 1920, which provides a statutory cause of action that expressly guarantees a seamen injured during the course of his employment by his employer's negligence a cause of action to recover his damages. 46 U.S.C. § 30104. It also adopts to seamen, all laws and statutes that are applicable to railway workers under the F.E.L.A., which explicitly prohibit the use of "any contract, rule, regulation, or device whatsoever … to enable any common carrier to exempt itself from any liability created by this chapter…." 45 U.S.C. 55.

To achieve that purpose, the Jones Act affords seamen "heightened legal protections," *Chandris,* 515 U.S. at 354, 115 S.Ct. 2172, including the right to "recover ... with a lower showing of proximate cause than would be required in a non-admiralty case." *Dempsey v. Mac Towing, Inc.,* 876 F.2d 1538, 1542 (11th Cir.1989). Rather than showing, for example, that the employer's negligence was a substantial factor in causing the injury, "causation may be found [under the Jones Act] if the defendant's acts or omissions played any part, no matter [h]ow small, in bringing about the injury." *McClow v. Warrior & Gulf Navigation Co.,* 842 F.2d 1250, 1251 (11th Cir.1988) (citation omitted). This so-called "featherweight" causation standard, *id.* (citation omitted), dramatically increases the likelihood of recovery, thus reflecting the strong public policy deeply embedded in our nation's history.

Accordingly, the Admiralty Courts have a rich tradition of protection of seafarers, which flowed from the uniquely abhorrent conditions workers face at sea.

This Court like Congress, should continue to preserve seafarers' rights by ensuring their

ability to access U.S. Courts and obtain proper redress.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests this Court deny NCL's Motion to Compel Arbitration.

> Respectfully submitted,
>
> LIPCON, MARGULIES,
> ALSINA & WINKLEMAN, P.A.
> *Attorneys for Plaintiff*
> One Biscayne Tower, Suite 1776
> 2 South Biscayne Boulevard
> Miami, Florida 33131
> Telephone No.: (305) 373-3016
> Facsimile No.: (305) 373-6204
>
> By: */s/ Carol L. Finklehoffe*
> **CAROL L. FINKLEOFFE**
> Florida Bar No. 0015903
> cfinklehoffe@lipcon.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 21, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

> By: */s/ Carol L. Finklehoffe*
> **CAROL L. FINKLEOFFE**

## SERVICE LIST
*Carpio v. NCL (Bahamas) Ltd. et. al.*
Case no.: 1:18-cv-22923-DPG

| | |
|---|---|
| **Michael Winkleman, Esq.**<br>Florida Bar No.: 36719<br>mwinkleman@lipcon.com<br>**Carol L. Finklehoffe, Esq.**<br>Florida Bar No.: 0015903<br>cfinklehoffe@lipcon.com<br>LIPCON, MARGULIES,<br>ALSINA & WINKLEMAN, P.A.<br>One Biscayne Tower, Suite 1776<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone No.: (305) 373-3016<br>Facsimile No.: (305) 373-6204<br>*Attorneys for Plaintiff* | **Jerry D. Hamilton, Esq.**<br>Florida Bar No.: 970700<br>jhamilton@hamiltonmillerlaw.com<br>**Robert M. Oldershaw, Esq.**<br>Florida Bar No.: 86071<br>roldershaw@hamiltonmillerlaw.com<br>**Elisha M. Sullivan, Esq.**<br>Florida Bar No.: 57559<br>esullivan@hamiltonmillerlaw.com<br>emarrero@hammiltonmillerlaw.com<br>dlemus@hamiltonmillerlaw.com<br>150 S.E. 2nd Avenue, Suite 1200<br>Miami, Florida 33131<br>Tel: (305) 379-3686<br>Fax: (305) 379-3690<br>*Attorneys for Defendant Hatecke Service USA, LLC* |
| **Anthony P. Strasius, Esq.**<br>Florida Bar No.: 988715<br>Anthony.strasius@wilsonelser.com<br>**Steven C. Jones, Esq**.<br>Florida Bar No.: 107516<br>Steven.jones@wilsonelser.com<br>Wilson, Elser, Moskowitz,<br>Edelman & Dicker, LLP<br>100 Southeast Second Street, Suite 3800<br>Miami, Florida 33131<br>Tel: (305) 374-4400<br>Fax: (305) 579-0261<br>*Attorneys for Defendant D-1 Davit International, Inc.* | **Curtis Mase, Esq.**<br>Florida Bar No.: 73928<br>cmase@maselaw.com<br>kfehr@maselaw.com<br>**Cameron W. Eubanks, Esq.**<br>Florida Bar No.: 85865<br>ceubanks@maselaw.com<br>rcoakley@maselaw.com<br>**Adam Finkel, Esq.**<br>Florida Bar No.: 101505<br>afinkel@maselaw.com<br>carbelaez@maselaw.com<br>filing@maselaw.com<br>**Scott P. Mebane, Esq.**<br>Florida Bar No.: 273030<br>smebane@maselaw.com<br>ctoth@maselaw.com<br>receptionist@maselaw.com<br>MASE, MEBANE & BRIGGS<br>2601 S. Bayshore, Drive, Suite 800<br>Miami, Florida 33133<br>Telephone: (305) 377-3770<br>Facsimile: (305) 377-0800<br>*Attorneys for Defendant NCL (Bahamas) Ltd.* |