UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-22923-DPG

JELEN CARPIO
as personal representative of the
estate of DIOGENES CARPIO, JR.,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,
D-I DAVIT INTERNATIONAL, INC.,
HATECKE SERVICE USA, LLC,

    Defendants.
_____/

**DEFENDANT D-I DAVIT INTERNATIONAL, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND CROSS-MOTION TO STAY**

COMES NOW, Defendant D-I Davit International, Inc. ("Davit US"),[1] by and through undersigned counsel, and hereby files its Opposition to the Renewed Motion for Remand in Light of Court's Order of January 9, 2019 (the "Motion to Remand") and its Cross-Motion to Stay this action (the "Opposing Cross-Motion") in light of the status of these and related proceedings, and states:

**SUMMARY**

1. This Opposing Cross-Motion is necessitated by the procedural morass created by Plaintiff and, particularly, her counsel. Plaintiff's counsel has, here and in related proceedings,

---

[1] Plaintiff has failed to serve D-I Davit International-Hische GmbH ("Davit DE") in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). This Opposing Cross-Motion is therefore made solely on behalf of Davit US.

1

pursued factually meritless claims against an incorrect party with no involvement in the subject matter of this litigation. Plaintiff's counsel pursued these claims despite full knowledge of the proper party through Davit US' repeated identifications and information disclosures. The state of these proceedings, as well as (i) questions raised by a related arbitration proceeding in the Philippines, (ii) the prejudice that Davit US continues to suffer as a plainly unnecessary and improper party to this litigation under applicable law, and (iii) notions of judicial economy and efficiency, all warrant denying Plaintiff's Motion to Remand, and staying this action pending resolution of the Philippine arbitral proceedings.

## FACTUAL AND PROCEDURAL SUMMARY

2. Plaintiff commenced this action by filing a Complaint on or about April 27, 2018, in an action styled *Jelen Carpio v. NCL (Bahamas) Ltd. et al.*, 2018-013783-CA-01 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida asserting claims for personal injuries and wrongful against Davit US, NCL (Bahamas) Ltd. ("NCL") and Hatecke Service USA, LLC ("Hatecke") on behalf of Decedent, Diogenes Carpio, Jr. ("Decedent"). (*See* Dkt No. 1-2).

3. Plaintiff's Complaint generally alleged that Decedent was involved in a fatal lifeboat accident while working onboard Defendant NCL's vessel, the *Norwegian Breakaway*, and that this accident involved the failure of certain equipment onboard the vessel, including a davit mechanism which Plaintiff alleges was manufactured, installed and/or maintained by Davit US. (*Id.*)

4. On July 19, 2018, NCL filed a Notice of Removal pursuant to 9 U.S.C. § 205, generally arguing that (i) a binding and enforceable arbitration agreement existed between Plaintiff and NCL, pursuant to which those parties had already engaged in and settled arbitration

2

proceedings in the Philippines, and (ii) the instant proceedings should therefore be compelled to arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("The Convention Act," 9 U.S.C. § 201-08). (Dkt. No. 1).

5.  Similar proceedings unfolded in a related action. Plaintiff's counsel, also representing Geraldine Buenaventura, representative for Decedent Ben Buenaventura, filed a separate complaint on or about April 27, 2018 in *Geraldine Buenaventura v. NCL (Bahamas) Ltd. et al.*, 2018-013789-CA-01 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County (the "Buenaventura Action"). (*See* Buenaventura Action, Dkt. No. 1-2). The Buenaventura Action Complaint asserted substantially identical claims and allegations against Davit US, NCL and Hatecke for injuries and wrongful death suffered by Ben Buenaventura arising from the same accident onboard the *Norwegian Breakaway*. (*Id*). NCL also removed that action pursuant to 9 U.S.C. § 205, again arguing the existence of a binding arbitration agreement between the Buenaventura Action plaintiff and NCL, and asserting that proceedings against NCL should be compelled to arbitration. (Buenaventura Action, Dkt. No. 1).

6.  After appearing in the actions, counsel for Davit US promptly informed counsel for Plaintiff that Davit US was *not* the proper defendant, as it neither manufactured nor maintained the davit mechanism in question, and that, in fact, the proper party was Davit DE. (*See* Dkt. No. 16-3). In June 2018 through August of 2018, Davit US corresponded with Plaintiff's counsel to (i) identify Davit DE as the proper party, (ii) provide testimony by Joachim Weise, general manager of Davit DE and sole officer of Davit US, stating that Davit US was an inactive company without operations while Davit DE had manufactured and sold the subject davits, and (iii) provided Davit US' tax returns reflecting Davit US' lack of operations. (*See* Dkt. Nos. 16-3, 16-4).

7. Plaintiff's counsel, however, refused to dismiss the US entity in favor of the proper German entity, forcing Davit US to file a motion to dismiss and/or for summary judgment on July 27, 2018, arguing that Davit US was not a proper party, could not be found liable to Plaintiff as it had no role in the davit mechanism's chain of distribution, and in fact *was not even in existence at the time of the Norwegian Breakaway's construction and the davit mechanism's manufacture*. (*See* Dkt. No. 16 and accompanying attachments).

8. Plaintiff responded by filing an Amended Complaint on August 28, 2018 (the "Amended Complaint"), containing superficial amendments and purporting to add Davit DE as a defendant, even though Plaintiff took no action to serve the German entity. (*See* Dkt. No. 22). Plaintiff also filed an initial Motion to Remand directed toward NCL's removal of the case in August of 2018. (*See* Dkt. No. 17).

9. On September 11, 2018, Davit US filed a renewed Motion to Dismiss and/or for Summary Judgment on behalf of Davit US (noting that Plaintiff had not effectuated service of the Amended Complaint on Davit DE) (the "Davit US Motion to Dismiss"). (*See* Dkt. No. 30 and attachments). Additionally, in September of 2018, NCL filed an Opposition to Plaintiff's initial motion to remand, and filed its own motion to dismiss the Amended Complaint in favor of compelling arbitral proceedings in the Philippines. (*See* Dkt. Nos. 26, 29, and attachments).

10. Similar briefing took place in the Buenaventura Action, with Plaintiff filing a substantially identical Amended Complaint relating to Ben Buenaventura's claims and Defendants NCL and Davit US filing dispositive motions. NCL again sought to compel arbitration and Davit

US also sought dismissal based on Davit US' lack of involvement in the allegedly defective equipment. (*See* Buenaventura Action, Dkt Nos. 31, 41, 42, and their respective attachments).[2]

11. The parties completed briefing on the various dispositive motions in both this action and the Buenaventura Action by October 12, 2018. (Dkt. No. 39-41; Buenaventura Action, Dkt. Nos. 50, 52, 53).

12. Following briefing on the dispositive motions, Plaintiff took no meaningful action to advance this action, including any efforts to properly serve the German entity.

13. As of January 1, 2019, the Davit US Motion to Dismiss remained pending, and nothing in the record suggested Plaintiff's counsel had even commenced service of process on Davit DE in accordance with the Hague Convention.

14. On January 9, 2019, this Court entered its Order on NCL's Motion to Dismiss (the "January 2019 Order"), but did not rule on Davit US's dispositive motion. This Court determined that Plaintiff did not dispute that binding and enforceable arbitration agreement existed between the parties, but instead argued that a Settlement Agreement between NCL and Plaintiff, signed by the Philippines arbitral authority, "constitute[d] a final judgment of the arbitration proceeding which this Court should vacate as a matter of public policy." (January 2019 Order, Dkt. No. 42, p. 4). The Court declined to do so, found that arbitration had not yet taken place, and dismissed the claims against NCL without prejudice in favor of arbitration in the Philippines. (*Id.*, p. 4-5).

15. Plaintiff subsequently filed its renewed Motion to Remand, arguing the grounds for removal, 9 U.S.C. § 205 no longer applied. (Dkt. No. 47). Despite filing the Motion to Remand, contending that this Court no longer has jurisdiction, Plaintiff also nevertheless purported to notice

---

[2] Defendant Hatecke also filed dispositive motions in both actions, arguing Plaintiff failed to plead any genuine claim against that defendant. (*See* Dkt. No. 27 and attachments; Buenaventura Action, Dkt. No. 39 and attachments).

a deposition of Davit US' sole officer, Joachim Wiese, *months* after receiving Wiese's written testimony and supporting documents (and despite identifying no genuine deficiencies in the information provided).[3]

16. Plaintiff's counsel filed a similar motion to remand in the Buenaventura Action. In that action, Plaintiff had filed a motion for remand in August of 2018, arguing that the Philippine arbitral authority had already determined that Plaintiff's claims fell outside the arbitration agreement and required a full trial and, therefore, since the matter had already been arbitrated, removal based on 9 U.S.C. § 205, did not apply. (Buenaventura Action, Dkt. No. 21).

17. NCL opposed in that case, arguing Plaintiff's motion was disingenuous as the matter had not actually been arbitrated, but rather that the Philippine arbitral board never ruled on the merits of Plaintiff's claims and instead dismissed an arbitration action between the parties on procedural and jurisdictional grounds. (Buenaventura Action, Dkt, No. 35). NCL moved the Buenaventura court to compel arbitration (Buenaventura Action, Dkt. No. 42), and petitioned the Philippines Court of Appeals to review the Philippines' arbitral authority's jurisdictional determination. (Buenaventura Action, Dkt. No. 69). In response, Plaintiff moved to stay the action pending resolution of the Philippines arbitration proceeding. (*Id.*)

18. In a February 8, 2019 Order, Chief District Judge K. Michael Moore denied the motion to remand, determining that the court had jurisdiction under 9 U.S.C. § 205, as the action related to an international arbitration agreement, but declined to compel the case to arbitration. (Buenaventura Action, Dkt. No. 78). Instead, the Chief Judge granted Plaintiff's motion to stay in part, finding that the decision of the Philippines Court of Appeals would determine whether

---

[3] This inconsistent and improper deposition notice is the subject of the Motion for Protective Order filed contemporaneously with this Opposing Cross-Motion.

Plaintiff's claims are capable of arbitration or require a full-blown trial. (*Id.*) The Chief Judge therefore stayed the Buenaventura Action pending resolution of the Philippine arbitral proceedings.

19. As set forth below, this Court's direction of the claims against NCL to arbitration and dismissal of the claims against NCL "without prejudice" creates open issues so long as the Philippines proceedings remain unresolved. These issues directly impact the claims against improper party Davit US and create the risk of unnecessarily prolonged and duplicative proceedings.

## MEMORANDUM OF LAW

District courts possess inherent authority to stay proceedings. In determining whether to grant a motion to stay, the district court acts within its own general discretion integral to its power to control its own docket. *Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *American Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir.1984). In certain matters, a stay may "promote judicial economy, reduce confusion and prejudice, and prevent possible inconsistent resolutions." *Axa Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*, 608 F.Supp.2d 1330, 1346 (S.D.Fla.2009).

**I.   Davit US Faces the Continued Oppressive Burden of Litigating a Matter in Which It Is Not a Proper Party, as Plaintiff and Her Counsel Well Know**

As an initial matter, it bears comment that Davit US faces a substantial and wholly unnecessary burden in litigating this matter. It is not a proper party to this lawsuit, yet Plaintiff seeks to drag it from court to court, advancing meritless claims against it. Plaintiff has no credible basis to assert claims against Davit US, knowing full well that Davit DE is the proper party in interest.

Simply put, Davit US *cannot possibly have any involvement* with the subject davits. Plaintiff's counsel knows full well that Davit US did not manufacture or install the davits onboard the *Norwegian Breakaway*: construction of that ship concluded in *April* of 2013, and Davit US was not incorporated until *October* 2013. (Dkt. No. 30). Moreover, Plaintiff's counsel knows full well that Davit US had no involvement in their subsequent servicing or maintenance: Plaintiff received documentation (i) demonstrating that Davit US has no corporate operations *and* (ii) evidencing that NCL's service contracts *were with Davit DE*. (Dkt. Nos. 30-1, 30-2). Plaintiff also received written testimony that Davit US had no involvement with the *Norwegian Breakaway*'s davits. (Dkt. No. 30-2).

Since being forced to appear in this action in *June 2018*, Davit US' counsel has forthrightly told Plaintiff's counsel that they were pursuing the wrong party, and that they should be directing their claims to Davit DE, rather than a subsidiary with no operations, no assets, and no insurance of its own. Plaintiff's attorneys – aware for *nine months* that they are pursuing the wrong entity – have identified no genuine basis to controvert the evidence provided.[4] They merely resort to stubborn refusal to (i) acknowledge the facts and (ii) take any action to serve the proper entity, Davit DE. Davit US brought this to the Court's attention the Davit US Motion to Dismiss, which has now been pending for over *four months*. It is patently oppressive and unfair that Davit US, which *should never have been a party in the first place*, faces remand of this matter when its dispositive motion has been pending, unresolved, for months and it would be required to begin the process anew in state court.

---

[4] Indeed, they cannot do so. For example, their speculative attempts to oppose the Davit US Motion to Dismiss relied on making factual allegations that concerned *Davit DE*'s operations, showing they cannot point to anything suggesting *Davit US* conducts any business activity. (*See* Dkt. No. 41).

8

**II.      Judicial Economy Is Best Served by a Stay of These Proceedings**

Added to the obvious burden Davit US faces as an improper party, the plain reality is that the procedural posture created by Plaintiff's counsel's intransigence creates a risk of prolonged and duplicative proceedings due to the interplay with the Philippine proceedings, the question of the viability of Plaintiff's claims against NCL, and the Court's delay in resolving Davit US' dispositive motion.  Therefore, a stay is warranted pending resolution of the Philippine arbitral proceedings so that the procedural landscape can be drawn in clearer relief.

The crux of the matter is that this Court's January 2019 Order did not resolve with finality NCL's involvement with these proceedings, or whether 9 U.S.C. § 205 applies.  This creates the prospect of fractured litigation in state and federal courts.  NCL's dismissal was made without prejudice, and only time will tell whether NCL finds its way back into American proceedings following the outcome of the arbitration.  Indeed, based on the arguments already presented to this Court by NCL and Plaintiff's counsel, it is wholly conceivable that in arbitration, NCL will again argue the Release of Rights is conclusive against Plaintiff's claims, with Plaintiff opposing on grounds that misrepresentations rendered the Release of Rights invalid.  It is further conceivable that the Philippines arbitral authority will side with NCL over Plaintiff's protestations and determine that the Release of Rights resolves Plaintiff's claims with finality.  This would likely result in Plaintiff bringing suit against NCL in the Florida yet again to claim, as she did here, that the Release of Rights is void under Article V of the Convention Act, a claim which would be subject to removal to this Court.

This creates the risk of procedural duplication and piecemeal litigation.  If the matter is remanded now, and this action sent to state court (with Davit US required to expend further costs and resources to seek dismissal of the patently improper claims against it for the *third time*), the

9

outcome of the Philippines arbitral proceedings may then result in subsequent proceedings in federal court involving NCL. Consequently, an unnecessary waste of judicial resources will occur as both a federal and a state court will be tasked with adjudicating claims arising out of the same factual matter, creating unnecessary duplication and all the attendant waste of judicial resources that will occur from having different facets of the same action heard in multiple fora. Additionally, Davit DE – assuming Plaintiff ever serves it in a state court action – will suffer the prejudice of litigating claims against it without the presence of NCL, the owner of the *Norwegian Breakaway* and a party against whom Davit DE could have prospective claims for contribution or common law indemnification.[5] The prospective impact of the Philippines arbitration on this proceeding and the potential fragmentation that may result is illustrated by the analogous decision in the Buenaventura Action. Recognizing the procedural impact NCL's application to the Philippines Court of Appeals decision could have on the litigation, Chief Judge Moore elected to stay the proceedings until resolution of the Philippine action could afford additional clarity.

Thus, if this matter were stayed, then the risks of fragmented and prolonged proceedings (which are inherently unfair to improper party Davit US) would be obviated. If the matter were stayed pending resolution of the Philippine proceedings then this Court would remain available as a convenient, available forum to address every prospective aspect of this case once the Philippines action sharpened the procedural issues, including (i) Davit US' dispositive motion which has been

---

[5] The claims against Davit US are so factually baseless in law and fact that this Opposing Cross-Motion will not even assume for the sake of argument that Davit US will be found to be a proper party, and Davit US reserves (i) all rights to continue to advance this argument in this and any other court, and (ii) any and all related rights and claims (including the right to move in the applicable court for sanctions for pursuit of frivolous claims).

9637966v.1

pending since October, (ii) Plaintiff's claims against Davit DE, once that entity is properly served,[6] (iii) any defenses Plaintiff may wish to bring concerning enforcement of the Philippines arbitral authority, and (iv) any defenses or third-party claims Davit DE may possess against NCL.[7]

Against this, Plaintiff suffers no real prejudice from the stay. Plaintiff will still be able to advance her primary claims against Decedent's employer in the Philippines arbitration action, and will suffer no harm from a stay of her improper claims against Davit US. Plaintiff has no valid claims against Davit US, has made no effort to move this litigation forward since briefing on Davit US' dispositive motion concluded *in October*, and has made no efforts to serve the proper party in interest, Davit DE – even though Plaintiff's counsel learned it was the correct entity *over nine months ago in June of 2018*. By pursuing an improper defendant in such a desultory fashion, and pursuing the proper defendant not at all, Plaintiff's counsel has shown that no genuine harm would result from a stay of these proceedings while the Philippines action is resolved. And against this lack of prejudice, the public interest would be served by conserving judicial resources and preventing piecemeal litigation.

## CONCLUSION

For the foregoing reasons, Defendant Davit US respectfully requests that this Court enter an Order (i) denying the Motion to Remand, (ii) granting Davit US' Opposing Cross-Motion to Stay this action pending resolution of the Philippines arbitration proceeding, and (iii) granting such other and further relief as the Court deems just and proper.

---

[6] As stated, this Opposing Cross-Motion is made solely on behalf of Davit US, and its arguments on its own behalf are without waiver or prejudice to any arguments and defenses Davit DE may possess and assert once it is properly served in this or any related proceeding.

[7] Furthermore, additional savings of judicial resources and further amelioration of risks of unnecessary duplication and inconsistent judgments could be found if, after conclusion of Philippines arbitration proceedings, this action were administratively consolidated with the Buenaventura Action, which stems from the same operative facts.

9637966v.1

*Certification of Compliance with Local Rules 7.1*

Undersigned counsel hereby certifies that he has conferred with counsel for the Plaintiff in accordance with S.D. Fla. Local Rule 7.1 (A)(3) in a good faith effort to resolve the issues raised by this Motion prior to filing.  Counsel for Plaintiff would not agree to the relief requested

Respectfully submitted,

*/s/ Anthony Strasius*
Anthony P. Strasius
Florida Bar No. 988715
anthony.strasius@wilsonelser.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
100 Southeast Second Street – Suite 34800
Miami, Florida 33131-2144
Tel. (205) 374-4400
Fax (305) 579-0261

*Attorneys for D-I Davit International, Inc.*

9637966v.1

**CERTIFICATE OF SERVICE**

   **I HEREBY CERTIFY** that on February 27, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Michael Winkleman, Esq.
Jason R. Margulies, Esq.
Adria G. Notari, Esq.
LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
One Biscayne Tower
2 South Biscayne Blvd., Suite 1776
Miami, FL 33131
Tel. (305) 373-3016
Fax (305) 373-6204
mwinkleman@lipcon.com
jmargulies@lipcon.com
anotari@lipcon.com

*Attorneys for Plaintiff*
*Jelen Carpio*

Curtis J. Mase, Esq.
Adam Finkel, Esq.
MASE, MEBANE & BRIGGS, P.A.
2601 S. Bayshore Drive, Suite 800
Miami, FL 33133
cmase@maselaw.com
afinkel@maselaw.com

*Attorneys for Defendant*
*NCL (Bahamas) Ltd.*

Jerry D. Hamilton, Esq.
Robert M. Oldershaw, Esq.
Elisha M. Sullivan, Esq.
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, FL 33131
Tel. (305) 379-3686
Fax (305) 379-3690
jhamilton@hamiltonmillerlaw.com
roldershaw@hamiltonmillerlaw.com
esullivan@hamiltonmillerlaw.com

*Attorneys for Defendant*
*Hatecke Service USA, LLC*

9637966v.1