**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-22923-DPG**

JELEN CARPIO
as personal representative of the
estate of DIOGENES CARPIO, JR.,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,
D-I DAVIT INTERNATIONAL, INC.,
HATECKE SERVICE USA, LLC,

    Defendants.
_____/

**DEFENDANT D-I DAVIT INTERNATIONAL, INC.'S REPLY MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO CROSS-MOTION TO STAY**

COMES NOW, Defendant D-I Davit International, Inc. ("Davit US"),[1] by and through undersigned counsel, and hereby files its Reply to Plaintiff's Opposition to Davit US' Cross-Motion to Stay this action (the "Opposing Cross-Motion"),[2] and states:

**SUMMARY**

Rather than address the issues of procedural fragmentation and piecemeal litigation that warrant a stay in this matter, the Opposition here strangely attempts only to justify Plaintiff's counsel's continued refusal to accept plain facts in the record and their stubborn prosecution of improper claims. Accordingly, Plaintiff identified no genuine basis of opposition, and a stay

---

[1] Plaintiff has failed to serve D-I Davit International-Hische GmbH ("Davit DE") in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). Accordingly, the Opposing Cross-Motion and this Reply are made solely on Davit US' behalf.

[2] All other capitalized terms used but not defined herein shall have the meaning ascribed to them in the Opposing Cross-Motion.

1

should issue.

However, given that Plaintiff's "justifications" rely on misrepresentation and speculation, and in no way actually alter the facts establishing that Davit US had *no involvement* in the subject matter of this dispute, Davit US will take the opportunity to correct Plaintiff's mischaracterizations.

**I.    Plaintiff Identifies No Genuine Basis to Challenge the Facts Disclosed to Her**

As set forth in (i) the Opposing Cross-Motion, (ii) Davit US' dispositive motion in this case, and (iii) Davit US' reply in further support of its dispositive motion, Davit US simply had no involvement in the subject matter of this dispute.  Davit US was incorporated *after* the vessel in issue, the *Norwegian Breakaway*, was constructed.  Furthermore, though now a legally extant entity, it has no actual operations and had no involvement with the installation or maintenance of the equipment onboard the vessel. (Dkt. No. 30, p. 4; Dkt. No. 4, pp. 3-4; Dkt. No. 48, pp. 3-4, 8). Instead, it was *Davit DE* – a German entity – that manufactured, installed, and serviced the davit mechanism that Plaintiff alleges contributed to Decedent's accident. (Dkt. No. 30, pp. 5-6, 10-13). Davit US repeatedly informed Plaintiff's counsel of these facts.  Plaintiff's counsel received written testimony from Joachim Wiese (Davit US' sole officer) as well as documentary evidence such as Davit US' tax returns and documentation between Davit DE and the *Norwegian Breakaway*'s owners, Defendant NCL, regarding the subject davits.  This evidence all corroborated that Davit US had no role respecting the subject davits. (Dkt. No. 48, p. 3).

Plaintiff's counsel identifies no genuine deficiency in any of Davit US' previous disclosures.  Instead, Plaintiff resorts ill-founded contentions to suggest Mr. Wiese's testimony was not "true and accurate." (Dkt. No. 51, p. 2).  All the while, Plaintiff tellingly ignores the documentary evidence provided and omits mention of it from her Opposition entirely.  However,

none of Plaintiff's contentions pass even cursory scrutiny. They are mere repetitions of misleading arguments previously advanced to oppose Davit US' dispositive motion, and fall into three easily refuted categories:

    (i)    allegations regarding Davit US' *formal* legal existence (which Davit US has never once contested) that *ignore* facts demonstrating its lack of substantive operations and involvement with the *Norwegian Breakaway*;

    (ii)    allegations regarding *Davit DE's* operations (not *Davit US'* purported activities) that only support rather than undermine the essential facts; and

    (iii)    misrepresentation by reframing a previously refuted argument.

**A.**    **Plaintiff's Defective Allegations Regarding Davit US' "Active" Status**

Plaintiff's Opposition makes seven allegations claiming that Davit US is an "active" corporation. (Dkt. No. 51, p. 2). In summary, the Opposition claims that (i) Davit US is listed as an "active" corporation with the Florida Department of Corporations, (ii) Davit US has made public filings such as an Application for Authorization to Transact Business in Florida and annual reports to maintain this "active" status, and (iii) that such filings designate a principal place of business and list Joachim Wiese as its director, officer, and president. (*Id*.) All of these contentions concern Davit US' formal legal existence and nothing more. None of them undermine the essential facts that Davit US has no actual operations and had no role in the subject davits' manufacture, installation, or maintenance.

Simply put, such contentions attempt to controvert something *Davit US has never claimed*. Not once in these proceedings has Davit US ever contested that it is an extant corporate entity in good standing with state authorities. Rather, it simply provided evidence that despite this *pro forma* existence, it has no *substantive* operations to demonstrate its lack of involvement in this dispute. That Davit US is an "active" corporation with state authorities as a matter bare legal existence, that Joachim Wiese is its officer, and that it has a designated place of business *were*

3

*never in dispute*. In fact, Davit US' evidence establishing Davit US' lack of involvement in the davits' distribution chain plainly *disclosed these facts*.[3] What Plaintiff either fails to grasp or intentionally ignores is the subsequent documentation and testimony evidencing that Davit US has no *actual* operations and income despite its corporate existence, and that it was not involved in the purchase and maintenance contracts between Davit DE and the *Norwegian Breakaway*'s owners. (*See* Dkt. No. 48, pp. 3-4, 8; Dkt. No. 30, pp. 5-6, 10-13).

Thus, Plaintiff's contentions are a textbook example of prizing form over substance. Plaintiff belabors under the assumption that because Davit US is "active" in that it has a current legal existence, they have somehow challenged the evidence establishing it is not "active" in a substantive sense, lacking actual operations. They have not. Plaintiff's entire argument on this point rests on such semantic quibbling, and Plaintiff has not once raised *any* genuine factual challenge to the documentary evidence showing Davit US has no genuine operations. Indeed, when Plaintiff cites to regulatory filings in her Opposition, she adduces nothing from them that actually demonstrates real business activity. This is because she cannot. These annual reports, which Plaintiff tellingly neglects to attach, are mere formulaic filings to maintain current status, filings that show no actual activities within the state of Florida.[4]

In sum, Plaintiff has not and cannot show any actual operations by Davit US that would controvert the actual substance of Wiese's testimony, much less controvert the documentary evidence which Plaintiff's Opposition wholly ignores.

---

[3] (*See* Dkt. No. 30-1, Exhibit C, p. 1, Registered Entity Information with Delaware Department of State: Division of Corporations, detailing Davit US' incorporation information; *and* Dkt. No. 30-2, p. 1, testimony of Joachim Wiese noting he is Davit US' sole officer and that Davit US maintains its "only" place of business in Ft. Lauderdale, Florida).

[4] Copies of the annual reports Plaintiff omitted to attach are attached for the court's consideration as Exhibit A to the Supplemental Declaration of Anthony P. Strasius, dated March 13, 2019.

### B. Plaintiff's Irrelevant Allegations Regarding Davit DE's Operations

Plaintiff's inability to challenge the evidence is further demonstrated by Plaintiff's reliance on allegations regarding *Davit DE*'s operations. Plaintiff's next five allegations in her attempt to claim Davit US has some form of operations only detail activities by *Davit DE*. In summary, Plaintiff contends (i) that *Davit DE*'s website lists *Davit DE* as having an American office, (ii) that *Davit DE* issued press releases and other marketing materials stating that it opened a parts warehouse and/or "local service station" in Ft. Lauderdale, and (iii) that *Davit DE*'s "local service station" and/or "parts warehouse" is located at the same business address as Davit US. (Dkt. No., pp. 2-3).

These contentions evidence no activity by *Davit US*. Such contentions regarding business activities advertised and undertaken by Davit DE in its own name and on its own behalf do not show any independent or separate activity by Davit US that would suggest it is an actually active company. Ultimately, it is well-known to Plaintiff that Davit DE is the proper defendant here, that it is the entity that manufactured and installed the davits onboard the *Norwegian Breakaway* and entered into agreements to maintain them. (*See* Dkt. No. 48, p. 8). Contentions regarding Davit DE's operations does not controvert the fact that Davit US had no involvement; indeed, such purported facts only further corroborate that it was Davit DE that took the active role with respect to the subject davits. That Plaintiff's counsel resorts to contentions about Davit DE is an effective admission that they have nothing genuine linking Davit US to any actual act or role regarding the davits.

### C. Plaintiff's Final Unfounded Misrepresentation

Plaintiff's lack of any substantive challenge to Davit US' evidence is most clearly evidenced by her counsel's final contention, which is just a plain misrepresentation. Plaintiff

1193247v.1

asserts that "[i]nvestigation also shows that [Davit US] provides technical support and training to crewmembers of the *Norwegian Breakaway*, to ensure the crewmembers use and/or maintain the subject lifeboat system in a proper manner." (Dkt. No. 51, p. 3). As an initial matter, this assertion is coupled to no citation, no claimed basis of support. Unlike Davit US, which put its proofs before Plaintiff and this Court, Plaintiff's Opposition provides absolutely no evidence for her claims. Moreover, it is clear Plaintiff's counsel is merely artfully reframing past contentions.

Previously, in opposition to Davit US' dispositive motion, Plaintiff filed an opposition containing the exact sort of defective contentions raised again here. This opposition included a vague assertion that Plaintiff's "investigation also show that [Davit US] *and/or Davit DE* provides technical support and training to crewmembers of the Norwegian Breakaway, to ensure the crewmembers use and/or maintain the subject lifeboat system in a proper manner." (Dkt. No. 36, p. 6) (emphasis added). In its reply, Davit US pointed out the disingenuous use of an equivocal "and/or" conjunction between Davit US and Davit DE. (Dkt. No. 41, p. 4). Essentially, use of such a conjunction allows Plaintiff to bootstrap her unfounded claims against Davit US to the facts disclosed regarding Davit DE, the actual entity responsible for technical and training support. But having been challenged on this artful misuse previously, Plaintiff now merely drops the conjunction and reference to Davit DE, as if that somehow remedied the otherwise unfounded nature of this claim. It does not. Plaintiff has been provided ample evidence showing that Davit DE manufactured and installed the davits and held the contractual relationship with the *Norwegian Breakaway* regarding their maintenance. An unfounded claim to the contrary, based entirely on a previously raised and refuted disingenuous allegation, does not undermine that evidence

Surveying the deficiencies of Plaintiff's contentions, it is clear Plaintiff's counsel has identified no genuine basis to justify its continued claims against Davit US. Plaintiff misconstrues

Davit US' criticism as merely faulting Plaintiff for not "accepting [Davit US'] arguments." (Dkt. No. 51, p. 2). Davit US does no such thing. Davit US never asked Plaintiff to merely "accept" its conclusions, but to honestly survey the evidence Davit US voluntarily disclosed in the course of identifying the proper defendant for Plaintiff. Plaintiff's counsel's fault thus lies not in reasonable skepticism of opposing counsel's arguments, but rather in an unjustified refusal to address actual evidence provided to them. Rather than point to a legitimate deficiency in the evidence, one that would warrant their continued doubt and continued prosecution of factually deficient claims, they merely close their eyes to the truth and resort to the foregoing strained efforts to misconstrue the facts to explain their intransigence.

**II.     Plaintiff's Counsel Has No Justification For Failure to Pursue Proper Party Davit DE**

Plaintiff's Opposition also contains a curious argument – another not directed to the merits of the Opposing Cross-Motion – that they are somehow exculpated from failing to serve Davit DE because Davit DE failed to return a "Request to Waive Service of a Summons" as it was "required" to do. (Dkt. No. 51, pp. 3-4). This argument is incredible. The attempt to effect "service" by waiver is no excuse. Davit DE was not *obligated* to waive its right to proper service in order to suit Plaintiff's convenience. Davit DE is an entity headquartered in Germany, a country that together with the United States is a signatory to the Hague Convention. It is beyond cavil that the Hague Convention is mandatory in all cases in which it applies, including here where there is occasion to submit civil litigation pleadings abroad for service. *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694 (1988). Plaintiff must serve Davit DE in accordance with the Hague Convention, yet to date has failed to do so, and by its own admission has taken no demonstrable action despite vague assertions that they "began working with an international process service company[.]" (Dkt. No. 51, p. 4).

7

### III.  Plaintiff Fails to Address Davit US' Arguments Warranting a Stay

Ultimately, it bears note that Plaintiff's attempt to provide some thin factual justification for maintaining her improper claims and failing to serve the proper defendant fails to address the specific issues on the Opposing-Cross Motion.  As set forth in the Opposing Cross-Motion, remand of this matter is inappropriate in light of pending arbitration proceedings in the Philippines, as resolution of those proceedings may create procedural fragmentation of Plaintiff's claims across multiple American forums.  Until the procedural landscape is more clearly drawn a stay should issue, as occurred in a related action in *Buenaventura v. NCL et al.*, 18-cv-22922, also pending in this District.  (Dkt. No. 48, pp. 8-11).  This would to preserve judicial economy and promote consistent, efficient resolution of Plaintiff's claims.

Plaintiff, once again, does not address any of the substantive points directed to her, and does not contend with the issues of judicial economy and consistency that warrant a stay.  Instead, her Opposition merely claims *Buenaventura* is "distinguishable" from this case because the reason that matter is proceeding to arbitration differs somewhat.  Plaintiff argues that in *Buenaventura* the Philippines arbitral authority will be tasked with determining whether it has jurisdiction to rule on the merits of Plaintiff's claims in light of prior proceedings, whereas here there has been "no arbitration in the first instance."  (Dkt. No. 51, p. 4).  This, however, is a distinction lacking practical difference for purposes of assessing the Opposing Cross-Motion.

As Davit US pointed out, Defendant NCL's dismissal was made without prejudice, and – based on the arguments already presented in this proceeding – it is likely NCL will argue that a Release of Rights signed by Plaintiff is a valid, final resolution of arbitration in the Philippines.  Plaintiff in turn will likely return to this Court to argue the Release, or any other determination

against her, is invalid.  Plaintiff does not refute that she will make such an argument and will seek to extricate herself from the Philippines in favor of a United States forum, another telling omission that only supports Davit US' Opposing Cross-Motion.  As a consequence, claims against NCL arising from the same nucleus of facts will likely return to federal court, with Plaintiff claiming any determination against her in the Philippines is void under public policy concerns or similar arguments.  And all the while Davit US will have been forced to restart its dispositive motion practice in state court and Davit DE, assuming Plaintiff ever serves it properly, will eventually find itself in state court proceedings deprived of a co-defendant against which it could assert defenses and claims, leading to duplicative third party litigation.[5]

Thus, even though the *reason* for arbitration in the Philippines is slightly different between this action and *Buenaventura*, the ultimate outcomes of those arbitrations share an equally significant procedural impact on the disposition of the respective American actions.  A stay is therefore as equally justified here as it was in *Buenaventura* to avoid piecemeal litigation.  That Plaintiff failed to address such a fundamental issue in the Opposing Cross-Motion demonstrates they have no basis to do, and accordingly a stay should issue.

---

[5]  As noted, this application is made solely on behalf of Davit US, and is without waiver of, or prejudice to, any claim or defense Davit DE, who has not been served and has not appeared in this action, may possess or assert in this or any related proceeding.

## CONCLUSION

For the foregoing reasons, and those set forth in the Opposing Cross-Motion, Defendant Davit US respectfully requests that this Court enter an Order (i) denying the Motion to Remand, (ii) granting Davit US' Opposing Cross-Motion to Stay this action pending resolution of the Philippines arbitration proceeding, and (iii) granting such other and further relief as the Court deems just and proper.

    Respectfully submitted,

*/s/ Anthony Strasius*
Anthony P. Strasius
Florida Bar No. 988715
anthony.strasius@wilsonelser.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
100 Southeast Second Street – Suite 34800
Miami, Florida 33131-2144
Tel. (205) 374-4400
Fax (305) 579-0261

*Attorneys for D-I Davit International, Inc.*

1193247v.1

**CERTIFICATE OF SERVICE**

       **I HEREBY CERTIFY** that on March 13, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Michael Winkleman, Esq.
Jason R. Margulies, Esq.
Adria G. Notari, Esq.
LIPCON, MARGULIES, ALSINA &
WINKLEMAN, P.A.
One Biscayne Tower
2 South Biscayne Blvd., Suite 1776
Miami, FL 33131
Tel. (305) 373-3016
Fax (305) 373-6204
mwinkleman@lipcon.com
jmargulies@lipcon.com
anotari@lipcon.com

*Attorneys for Plaintiff*
*Jelen Carpio*

Curtis J. Mase, Esq.
Adam Finkel, Esq.
MASE, MEBANE & BRIGGS, P.A.
2601 S. Bayshore Drive, Suite 800
Miami, FL 33133
cmase@maselaw.com
afinkel@maselaw.com

*Attorneys for Defendant*
*NCL (Bahamas) Ltd.*

Jerry D. Hamilton, Esq.
Robert M. Oldershaw, Esq.
Elisha M. Sullivan, Esq.
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, FL 33131
Tel. (305) 379-3686
Fax (305) 379-3690
jhamilton@hamiltonmillerlaw.com
roldershaw@hamiltonmillerlaw.com
esullivan@hamiltonmillerlaw.com

*Attorneys for Defendant*
*Hatecke Service USA, LLC*